UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICHELLE BOURDELAIS
On behalf of herself and behalf
Of all others similarly situated,

                        Plaintiff,

    v.

JPMORGAN CHASE BANK, N.A.
and CHASE HOME FINANCE, LLC

                        Defendants.

Civil Action No. 03:10-cv-670 (HEH)

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTS ONE, TWO AND THREE OF THE AMENDED CLASS COMPLAINT

Defendants JPMorgan Chase Bank, N.A. and Chase Home Finance, LLC (collectively "Chase"), by counsel, pursuant to Fed. R. Civ. P. 12(b)(6), move to dismiss Counts One, Two, and Three of the Amended Class Complaint filed by Plaintiff, Michelle Bourdelais, for the reasons set forth below.

## INTRODUCTION

Plaintiff is a homeowner whose loan is serviced by Chase. She does not allege there was anything wrong with her loan. Instead, she alleges she became unable pay her mortgage after she and her husband lost their jobs and divorced, and the title to the home then was transferred solely to her. She alleges she applied for a loan modification from Chase under the federal government's Home Affordable Modification Program ("HAMP"), and that Chase offered her a Trial Period Plan ("TPP") under that program. As its name suggests, the "Trial" was the first

step in determining whether plaintiff was eligible for a permanent modification of her loan terms. Unfortunately, plaintiff was not eligible under guidelines set by the federal government's Home Affordable Modification Program ("HAMP"), and Chase denied her request for a permanent loan modification.

Plaintiff then filed this suit alleging she was entitled to a permanent modification based on her participation in the TPP. Under the Treasury Department's HAMP guidelines, loan servicers could allow borrowers to make reduced mortgage payments on a trial basis if income information obtained verbally indicated that they might be eligible for a modification. While on a TPP, a borrower was required to submit documentation to allow servicers to verify information obtained verbally and to determine their eligibility for permanent modifications under HAMP. Plaintiff's current theory, is that she was entitled to a permanent HAMP modification *regardless* of whether her documentation showed that she was actually qualified for one. This theory, which is based on a single phrase in a TPP, would eviscerate the very purpose of the TPP.

More fundamentally, even if the TPP had promised to offer a permanent modification of plaintiff's loan someday on unspecified terms, such an agreement would be, as a matter of law, an unenforceable "agreement to agree," lacking essential material terms such as the interest rate, monthly payment, and loan term. And plaintiff's contract theory articulates no viable theory of consideration supporting the TPP as an independent contract; in fact, the TPP allowed plaintiff to pay *less* than her existing mortgage required.

Plaintiff also asserts class claims for violation of the Fair Credit Reporting Act ("FCRA") and the Equal Credit Opportunity Act ("ECOA") based on Chase's alleged failure to provide notice of its denial of her request for a permanent loan modification. However, there is no private right of action under the FCRA provision relied on by plaintiff, and the ECOA provision

at issue does not apply where, as here, plaintiff was delinquent on her mortgage payments. Nor does Plaintiff allege any facts indicating how the denial letter Chase sent her was deficient or how any such deficiencies caused any damage.

## FACTUAL BACKGROUND

**A.     The U.S. Treasury's Home Affordable Modification Program.**

In February 2009, the U.S. Department of the Treasury announced the Making Home Affordable Program, of which HAMP is a part. HAMP aims "to financially assist three to four million homeowners who have defaulted on their mortgages or who are in imminent risk of default by reducing monthly payments to sustainable levels." *Williams v. Geithner*, No. 09-1959, 2009 U.S. Dist. LEXIS 104096, at *6 (D. Minn. Nov. 9, 2009). Although HAMP's purpose is to assist at-risk homeowners, it does not aim to prevent all foreclosures — only "avoidable" foreclosures. *See, e.g.,* 12 U.S.C. § 5219(a)(1) (Emergency Economic Stabilization Act of 2008 ("EESA")) (authorizing the Secretary of the Treasury to "facilitate loan modifications to prevent avoidable foreclosures"). HAMP does this by offering financial incentives for borrowers, servicers, and investors to enter into loan modifications where such modifications make economic sense for all parties. (*See* Supplemental Directive 09-01 (cited in Am. Compl. p. 8 n.5 and attached to Am. Compl. as Ex. 2).)

To accomplish HAMP's objectives, and pursuant to authority delegated under the EESA, the Treasury promulgated guidelines under which the net present value ("NPV") of a HAMP modified loan can be compared to the NPV of an unmodified loan (*i.e.*, a loan that will likely proceed to foreclosure). (*See id.* at pp. 5-6.) The guidelines specify threshold criteria to identify borrowers who *may* be eligible for loan modifications. (*Id.* at p. 3.) The guidelines go on to enumerate a sequence of steps for servicers to apply to the loans of potentially eligible

borrowers — known as the "Standard Modification Waterfall" — to evaluate a hypothetical loan modification that would lower the borrower's payment to no greater than 31% of the borrower's gross monthly income. (*Id.* at p. 9.) The Standard Modification Waterfall includes:  reduction of the interest rate in increments of .125% (to no less than 2%), extension of the term of the loan, and principal forbearance. (*Id.* at pp. 10-11.) A potential modification can easily fail at the waterfall stage — a borrower's income, for example, may be insufficient to bring the required payment down to the threshold of 31% of monthly income.

The purpose of applying the Standard Modification Waterfall is to fashion a hypothetical modified loan that the servicer can use to conduct the NPV test, a "test that compares the NPV result for a modification to the NPV result for no modification." (*Id.* at p. 5.) "The NPV is essentially an accounting calculation to determine whether it is more profitable to modify the loan or allow the loan to go into foreclosure." *Williams*, 2009 U.S. Dist. LEXIS 104096, at *8-9 n.3.

For loans owned by Government-Sponsored Entities ("GSEs"), namely Fannie Mae and Freddie Mac, the HAMP guidelines went into immediate effect, as they were automatically incorporated into the GSEs' agreements with their loan servicers.  For non-GSE-owned loans, however, participation in HAMP is voluntary.  Servicers who choose to participate enter into contracts with the government — Servicer Participation Agreements ("SPAs") — under which they agree to participate in HAMP. (*See* Supplemental Directive 09-01 at p. 2 (attached to Am. Compl. as Ex. 2).) The Amended Complaint alleges that JPMorgan Chase Bank, N.A. entered into an SPA with Fannie Mae, as financial agent of the United States, on July 31, 2009, which it attaches as Exhibit 1. (Am. Compl. ¶ 33.)

Since HAMP's inception, Treasury has been continually refining the program.  To this end, on April 6, 2009, Treasury issued its first Supplemental Directive.  It has since issued 25 additional Supplemental Directives, the most recent of which was issued on December 2, 2010.

## B.   Prior Litigation to "Enforce" HAMP.

This suit is part of a recent wave of actions claiming an entitlement to loan modifications under HAMP.  The U.S. Treasury, however, has designated Freddie Mac as its exclusive agent in ensuring compliance with HAMP, and the program provides for extensive monitoring and compliance procedures.  (Supplemental Directive 09-01 at p. 25 (attached to Am. Compl. as Ex. 2).)  Accordingly, every federal court, including two District Judges in this Court, to have addressed the issue has uniformly held that there is no private right of action to enforce HAMP.

> Nowhere in the HAMP Guidelines, nor in the EESA, does it expressly provide for a private right of action.  Rather Congressional intent expressly indicates that compliance authority was delegated solely to Freddie Mac.  By delegating compliance authority to one entity, Freddie Mac, Congress intended that a private cause of action was not permitted.

*Marks v. Bank of Am., N.A.*, No. 3:10-cv-08039, 2010 U.S. Dist. LEXIS 61489, at *16 (D. Ariz. June 21, 2010); *see also Winn v. Chase Mortgage Servs.*, No. 2:10cv395, at pp. 5-7 (E.D. Va. Oct. 29, 2010) (Jackson, J.) (reviewing the language in Section 109 and decisions from other federal district courts and concluding that "Plaintiff does not have a private right of action under HAMP") (attached hereto as Exhibit 1); *Pennington v. PNC Mortgage*, No. 2:10c361, at pp. 6-7 (Aug. 11, 2010) (Doumar, J.) (finding that "Plaintiffs do not have a private right of action to enforce applicable HAMP regulations" as, in part, "[t]he applicable statute, 12 U.S.C. §5229, does not expressly create a private right of action against participating mortgage servicers.") (attached hereto as Exhibit 2); *Hoffman v. Bank of Am., N.A.*, No. C 10-2171, 2010 U.S. Dist. LEXIS 70455, at *14-15 (N.D. Cal. June 30, 2010) (rejecting the position that HAMP provides a

private right of action for borrower to sue lenders for breaching SPAs); *Simon v. Bank of Am., N.A.*, No.: 10-cv-00300, 2010 U.S. Dist. LEXIS 63480, at *26-27 (D. Nev. June 23, 2010) (holding that "the Home Affordable Modification Program does not provide borrowers with a private cause of action against lenders" and dismissing claim); *Aleem v. Bank of Am., N.A.*, No. 09-cv-01812, 2010 U.S. Dist. LEXIS 11944, at *8-11 (C.D. Cal. Feb. 9, 2010) (same); *Gaitan v. Mortg. Elec. Registration Sys.*, No. 09-cv-1009, 2009 U.S. Dist. LEXIS 97117, at *38 (C.D. Cal. Oct. 5, 2009) (same). Nor is there a private right of action under the EESA, HAMP's authorizing statute. *See, e.g., Gonzalez v. First Franklin Loan Servs.*, No. 09-cv-099941, 2010 U.S. Dist. LEXIS 1657, at *50 (E.D. Cal. Jan. 11, 2010) (no private right of action under EESA).[1]

In an attempt to circumvent the lack of a private right of action, various borrowers brought suits seeking to achieve the same result by asserting Due Process theories and breach of contract claims as purported third-party beneficiaries of the SPAs. But, the federal courts, including this Court, again, have uniformly rejected these attempts to end-run HAMP's lack of a private right of action, holding that HAMP should be enforced by federal regulators, not millions of individual borrowers bringing lawsuits in different courts across the country. *See, e.g., Williams*, 2009 U.S. Dist. LEXIS 104096, at *21-22 (rejecting Due Process claim, and holding that there is no cognizable property interest in loan modifications); *Winn*, No. 2:10cv395, at pp. 7-8 ("In line with the private right of action precedent, many district courts have also reached the

---

[1]  The lack of a private right of action to enforce HAMP is no oversight. HAMP is a voluntary program. *See Williams*, 2009 U.S. Dist. LEXIS 104096, at *22. Few banks would agree to participate in HAMP if, by doing so, they exposed themselves to lawsuits by the millions of borrowers who have sought or will seek HAMP modifications. *See Villa v. Wells Fargo Bank, N.A.*, No. 10-cv-81, 2010 U.S. Dist. LEXIS 23741, at *7 n.1 (S.D. Cal. Mar. 15, 2010) (noting that "the breadth and indefiniteness of a class of [would-be] beneficiaries" militated in favor of finding that borrowers lacked standing to bring breach of contract claims to enforce HAMP).

conclusion that the agreement contracts between the servicers and Fannie Mae do not provide

borrowers with a right to sue because the borrowers are incidental, rather than intended

beneficiaries of the contracts . . . . Accordingly, this analysis indicates that Plaintiff does not

have standing as an intentional third-party beneficiary."); *Pennington*, No. 2:10cv361, at p. 8

("The Court finds that Plaintiffs were incidental beneficiaries to the contract between Fannie

Mae and PNC, and that they have no judicially-enforceable rights under the contract.");

*Hoffman*, 2010 U.S. Dist. LEXIS 70455, at *14 ("[T]he Court finds that borrowers are not third

party beneficiaries under the HAMP servicer's agreement."); *Escobedo v. Countrywide Home*

*Loans, Inc.*, No. 09-cv-1557, 2009 U.S. Dist. LEXIS 117017, at *4-7 (S.D. Cal. Dec. 15, 2009)

(rejecting plaintiffs' breach of contract claim and holding that borrowers are not intended

beneficiaries under the SPAs); *Villa v. Wells Fargo Bank, N.A.*, No. 10-cv-81, 2010 U.S. Dist.

LEXIS 23741, at *6-7 (S.D. Cal. Mar. 15, 2010) (same).

  **C.**  **The Trial Period Plan ("TPP").**

   Plaintiff attempts to avoid the overwhelming weight of case law by recasting her HAMP

claim as a breach of contract claim concerning a TPP. Where a loan is in default or imminent

default, the lender may conduct an initial assessment of eligibility for HAMP. If a loan appears

to qualify upon preliminary examination, the loan may then be placed into a TPP, which is the

first step in the formal application process. (HAMP Base Net Present Value (NPV) Model

Specifications, at p. 2 (cited in Am. Compl. p. 8 n.4 and attached to Am. Compl. as Ex. 3).) The

TPP states that it will not take effect "unless and until both I and the Lender sign it and Lender

provides me with a copy of this Plan with the Lender's signature." *See* Home Affordable

Modification Trial Period Plan at p. 1 (attached hereto as Exhibit 3.)[2]  In addition, the TPP

clearly states that it:

> is not a modification of the Loan Documents and that the Loan
> Documents will not be modified unless and until (i) I meet all of
> the conditions required for modification, (ii) I receive a fully
> executed copy of a Modification Agreement, and (iii) the
> Modification Effective date has passed.

*Id.* at ¶ 2(G).

The TPP further informed the borrower that she will not receive a permanent

modification:

> [i]f prior to the Modification Effective Date, (i) the Lender does
> not provide me a fully executed copy of this Plan and the
> Modification Agreement; (ii) I have not made the Trial Period
> payments required under Section 2 of this Plan; or (iii) the Lender
> determines that my representations in Section 1 are no longer true
> and correct....

*Id.* at ¶ 2(F).  Section 1 attests to the borrower's hardship and imminent default, and promises to

provide "documentation for all income" of the borrower.  (*Id.* at ¶1(D)).  In the preceding

paragraph, however, the TPP states that the borrower's documentation must be sent "to permit

verification of all of my income . . . to determine *whether I qualify* for the offer [of a permanent

loan modification] described in this Plan (the 'Offer')."  (*Id.* at p. 1(emphasis added).)

The TPP highlights the possibility that the borrower may "not qualify for the Offer" and

indicates that the Lender will provide written notice if the borrower does not qualify.  (*Id.*)  In

---

[2]  On a motion to dismiss, the Court may consider documents referenced in the Complaint.  *See Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396 (4th Cir. 2006) (On a motion to dismiss "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed."); *Davis v. Bacigalupi*, 711 F. Supp. 2d 609, 617 (E.D. Va. 2010) (same, citing *Witthohn*, 164 Fed. Appx. at 396); *see also Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (permitting consideration of extraneous material if such materials are "integral to and explicitly relied on in the complaint").

addition, the TPP emphasizes that "the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until . . . I meet *all of the conditions* required for modification." (*Id.* at ¶ 2(G) (emphasis added).) "[A]ll terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents." (*Id.* at ¶ 4(D).)

The cover letter accompanying the TPP also makes it clear that the borrower may not ultimately qualify for a permanent modification: "We have enclosed a customized Home Affordable Modification Trial Period Plan ('Trial Period Plan'). *If you qualify* under the federal government's Home Affordable Modification program and comply with the terms of the Trial Period Plan, we will modify your mortgage loan . . . ." *See* Letter dated July 15, 2009 from Chase to Plaintiff, at p. 1 (attached hereto as Exhibit 4). The cover letter emphasizes that the TPP payments are only an "estimate of what your payment would be IF we are able to modify your loan under the terms of the program." (*Id.* (emphasis in original).)

The letter expressly highlights the possibility that "[y]ou may not qualify for this loan modification program." (*Id.*) The Frequently Asked Questions section reiterates the point, addressing questions such as "How long will it take to process my modification request and *determine if I qualify* for the program?" and "What do you do with my first trial period payment *if I do not qualify* for the program?" (*Id.* at p. 5 (emphasis added).)

Prior to June 1, 2010, servicers had the option of evaluating applicants for TPPs based solely upon the applicants' verbal representations concerning eligibility. This procedure allowed servicers to provide potentially eligible borrowers with payment relief quickly, by furnishing

TPPs prior to receiving supporting documentation. After the borrower executed and returned the TPP, and provided the documentation necessary for the servicer to verify his or her financial information and eligibility, the servicer would then finally evaluate the borrower for his or her eligibility for a permanent modification (*i.e.*, run the NPV test based on verified information, that ensure that the pre-modification monthly payment ratio exceeds 31% of income, and confirm that the modification produces a monthly payment ratio of no more than 31%). (Supplemental Directive 09-01 at pp. 6-7 (attached to Am. Compl. as Exhibit 2).) The guidelines expressly mandated that, where a TPP was extended based on verbal representations, the servicer "must" use the verified documentation to confirm that borrower's eligibility before extending a permanent loan modification. (*Id.* at pp. 5-6.)

Although reliance on the applicant's initial, verbal representations concerning eligibility allowed servicers to expedite the TPP process, it also resulted in some borrowers, who were originally extended TPPs, being ultimately found ineligible for permanent HAMP modifications, once their income and hardship information was later verified.

On January 28, 2010, Treasury issued Supplemental Directive 10-01, which effected a "significant program change," and directed servicers to require "full verification of borrower eligibility prior to offering a trial period plan." In this regard, borrowers must now submit an "initial package" of documentation, including a Request for Modification and Affidavit Form, IRS Form 4056-T or 4056T-EZ, and evidence of income, before a TPP may be extended. Borrowers are then converted to permanent modifications following the completion of trial payments. Although Supplemental Directive 10-01 went into effect on June 1, 2010, long after plaintiff applied for her modification (Am. Compl. ¶¶ 52, 59), its issuance is notable because, if

plaintiff were correct that the enrollment in a TPP already guaranteed a permanent modification, that significant program change would have been wholly unnecessary.

### D.    Plaintiff's Amended Complaint.[3]

Plaintiff alleges that she and her husband purchased a house in 2005 with a mortgage that is serviced by Chase. (Am. Compl. ¶¶ 27, 28.) In 2009, plaintiff and her husband both lost their jobs, and plaintiff separated from her husband shortly thereafter. (Am. Compl. ¶¶ 51, 52.) Sole ownership of the house then was transferred to plaintiff by Quit Claim deed between her and her ex-husband. (Am. Compl. ¶ 78.)

Plaintiff alleges that before this transfer of title, she and her husband skipped a mortgage payment, purportedly because she was told by an unnamed Chase employee that she could not be eligible for "the requested HAMP program" unless she was in default. (Am. Compl.. ¶ 54.) Shortly thereafter, plaintiff alleges Chase offered her a forbearance plan which temporarily reduced her monthly mortgage payments for June and July 2009. (Am. Compl. ¶ 57.) In August 2009, Chase offered Plaintiff the TPP based on the unverified information she had provided to Chase. (Am. Compl. ¶ 59.) Plaintiff alleges she made the required TPP payments and sent the additional information Chase required to determine whether she qualified for a permanent modification. (Am. Compl. ¶¶ 60-66.)

Plaintiff acknowledges that she received a letter dated June 17, 2010, in which Chase informed her that she was ineligible for a permanent loan modification because she did not pass the Net Present Value calculation required by the HAMP guidelines. (Am. Compl. ¶ 95.)

---

[3] On December 17, 2010, plaintiff filed an Amended Complaint that added JPMorgan Chase Bank, N.A. as a defendant and removed JPMorgan Chase & Co. as a defendant. No other substantive changes were made.

Notwithstanding her reference to the TPP as the first step in the documentation process (Am. Compl. ¶ 59), and the express language discussed above, Plaintiff asserts a breach of contract claim based on the theory that her submission of a TPP somehow created a contractual entitlement to a permanent loan modification.  (Am. Compl. ¶¶ 121-22.)  Plaintiff alleges seven additional claims based either on Chase's alleged failure to send her certain notices required by federal law or on Chase's credit reporting relating to plaintiff's loan.  Specifically, on behalf of a putative class, she alleges plaintiff alleges Chase failed to send "adverse action" letters required by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681m, (Count Two), the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d) and Virginia ECOA, Va. Code Ann. § 59.1-21.21:1 (Count Three).

As individual claims, Plaintiff alleges Chase failed to investigate her disputes regarding the manner in which Chase was reporting her mortgage to credit reporting agencies in violation of FCRA, 15 U.S.C. § 1681s-2(b)(1)(A) (Count Four), failed to review the information provided by consumer reporting agencies regarding her dispute in violation of FCRA, 15 U.S.C. § 1681s-2(b)(1)(B) (Count Five), failed to report to the credit reporting agencies that she disputed the way Chase was reporting her mortgage in violation of FCRA, 15 U.S.C. § 1681s-2(b)(1)(C) and (D) (Count Six), that Chase defamed her by reporting inaccurate information in her credit file (Count Seven), and Chase failed to adequate respond to an unspecified Qualified Written Request in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e) (Count Eight).  Although Chase believes all of these claims are without merit, for purposes of this motion, Chase focuses only on the claims asserted on behalf of a putative class:  Counts One, Two and Three.

## MOTION TO DISMISS STANDARD

When considering a motion to dismiss under Rule 12(b)(6), a court should take all

allegations of material fact in the complaint as true.  *Giarratano v. Johnson*, 521 F.3d 298, 303

(4th Cir. 2009).  However, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949-50 (2009).  "While legal conclusions can provide the complaint's

framework, they must be supported by factual allegations."  *Iqbal*, 129 S. Ct. at 1950.  Those

facts must be sufficient to push the claims "across the line from conceivable to plausible[.]"  *Id.*

at 1951 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Burnley v.*

*Norwood*, No. 10-cv-264, 2010 U.S. Dist. LEXIS 78666 (E.D. Va. Aug. 4, 2010) (Hudson, J.).

## ARGUMENT

## I.   PLAINTIFF DOES NOT STATE A CLAIM FOR BREACH OF THE TRIAL PERIOD PLAN (COUNT I).

In an attempted end-run around HAMP's lack of a private right of action, plaintiff

advances a "breach of contract" claim based on her TPP.  Putting aside the fact that a TPP cannot

reasonably be read to promise a borrower a permanent loan modification regardless of whether

the borrower actually qualifies for such modification, this breach of contract theory fails because

plaintiff does not allege the existence of a valid contract.

An enforceable contract requires, among other things, valid consideration and a meeting

of the minds as to the essential terms and conditions to which the parties have agreed to be

bound. *Janus v. Sproul*, 250 Va. 90, 91, 458 S.E.2d 300, 301 (1995); *Allen v. Aetna Casualty &*

*Surety, Co.*, 222 Va. 361, 363, 281 S.E.2d 818, 819 (1981).  Plaintiff does not, and cannot, allege

either the existence of an agreement containing the essential terms for a permanent loan modification or consideration.

### A.   Any Purported Promise to Provide a Loan Modification Lacked Material Terms and Would Be, at Most, an Unenforceable Agreement to Agree.

Plaintiff cannot plead the existence of an enforceable contract.  Although plaintiff asserts that the TPP "promises a permanent HAMP modification" to any borrower who makes three monthly payments and submits the requested documentation (regardless of its content) (Am. Compl. ¶¶ 37-39), she nowhere alleges that there was agreement on any of the key terms for a permanent modification, such as the principal amount, the monthly payment amount, the applicable interest rate, the loan term, or the amount of escrow payments owed, if any.  The TPP contained no such terms.  (*See* Exhibit 3 attached hereto.)  Indeed, the TPP expressly specified that the monthly payment amount for any permanent modification remained undetermined.  (*See id.* at ¶ 3 ("Lender *will* determine the new payment amount" only after the trial period ends) (emphasis added).)  In addition, the Treasury guidelines expressly note that "the monthly payment due under the [permanent loan modification] Agreement may differ from the payment due under the Trial Period Plan."  (Supplemental Directive 09-01 (attached to Am. Compl. as Ex. 2).)

Any purported promise to agree to a future loan modification on unspecified terms would be flatly unenforceable as a matter of law.  *Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*, 235 F. Supp. 2d 485, 488, 490 (E.D. Va. 2002) (holding that an agreement to negotiate at some point in the future is unenforceable under Virginia law.).  Mere "agreement[s] to agree in the future" are "too vague and indefinite to be enforced."  *W.J. Schafer Assocs., Inc. v. Cordant, Inc.,* 254 Va. 514, 519-20, 493 S.E.2d 512, 515 (1997).  Moreover, Virginia courts have expressly held that loan agreements are not enforceable where they fail to include basic terms

such as the interest rate, as the TPP fails to do here. *See, e.g., Dominion Bank, N.A. v. Kogon*, No. 14610, 1994 Va. Cir. LEXIS 918, at *2 (Cir. Ct. Loudoun Cnty. May 24, 1994) (finding that the bank's alleged offer to modify plaintiff's loan was not an enforceable contract because there was no agreement on the interest rate). The same logic requires the dismissal of plaintiff's breach of contract claim here.

The Court already has rejected this type of argument in a similar context. In *Pennington v. PNC Mortgage*, No. 2:10cv361, District Judge Robert G. Doumar addressed a claim by plaintiffs that they were incidental beneficiaries of the contract between Fannie Mae and PNC Mortgage. The Court noted that the plaintiffs did not claim to be a party to the contract between PNC and Fannie or stand in privity to the contract between HAMP and Fannie Mae. The Court then rejected plaintiffs' contractual rights against PNC Mortgage in holding that:

> Although Plaintiffs have not submitted this contract to the Court, the Court takes judicial notice of the fact that HAMP 'Guidelines guarantee only that an eligible borrower will be evaluated for a loan modification,' and do not *require* participating mortgage servicers to modify loans. . . . Indeed, 'even Fannie Mae, which has rights under the contract, cannot force [a participating mortgage loan servicer] to make any particular loan modification.' . . . Accordingly, Plaintiffs 'could not have . . . reasonably believed that [PNC] was obligated to modify [their] loan.

*Pennington*, No. 2:10cv361, at p. 7-8 (quoting *Wright v. Bank of Am.*, No. CV 10-01723, 2010 WL 2889117, at *4 (N.D. Cal. July 22, 2010), *Benito v. Indymac Morg. Servs.*, No. 2:09-CV-001218, 2010 WL 2130648 (D. Nev. May 21, 2010) and *Marks*, 2010 U.S. Dist. LEXIS 61489, at *11 (emphasis in original). The same logic and rationale applies to plaintiff's claimed contractual rights against Chase under the TPP as Chase was not *required* to modify her loan and Plaintiff could not have reasonably believed that Chase was obligated to modify her loan.

**B.      Plaintiff's Breach of Contract Claim Fails for Lack of Consideration.**

Even if plaintiff could somehow overcome her failure to identify the most basic

contractual terms, she still would not have pled the existence of an enforceable contract because

she has not and cannot identify any legally cognizable form of consideration supporting the

purported "agreement" on which her contract claim is based.   Under Virginia law, sufficient

consideration is an essential element of a valid and enforceable contract.  *Smith v. Mountjoy*, 280

Va. 46, 694 S.E.2d 598 (2010).   Adequate consideration "may be in the form of a benefit to the

party promising or a detriment to the party to whom the promise is made."  *Id. (quoting Brewer*

*v. Bank of Danville,* 202 Va. 807, 815, 120 S.E.2d 273, 279 (1961)).

Plaintiff argues that she provided valid consideration by making payments under her

TPP.  (Am. Compl. ¶ 124.)  Plaintiff's argument fails, however, for the simple reason that she

already had a legal obligation to make payments on her existing mortgage loan.  (Am. Compl.

¶¶ 49, 68 (alleging existence of plaintiff's mortgage loan).)  Plaintiff's TPP payment was *less*

*than* the monthly payment that plaintiff was already obligated to make, and the TPP payments

were applied to paying down these pre-existing obligations.  (Am. Compl. ¶ 59.)

The payment of money that plaintiff already owed is not a valid consideration.  *Masonite*

*Corp. v. Norfolk & W. R. Co.*, 601 F.2d 724, 727-28 (4th Cir. 1979) (holding that performing a

pre-existing contractual duty cannot be consideration for a new agreement with the same party);

*see also Seward v. New York Life Ins. Co.*, 154 Va. 154, 168, 152 S.E. 346, 350 (1930) (holding

that "a new promise, without other consideration than the performance of an existing contract in

accordance with its terms, is a naked promise without legal consideration therefor and

unenforceable.").

As such, a debtor's partial payment on an amount that is indisputably due is not

consideration for the creditor's promise to discharge the remainder of the debt.  *See Long v. Old*

*Point Bank*, 41 Va. Cir. 409, 424 (Cir. Ct. City of Norfolk 1997) (holding "paying a debt one is

already bound to pay is not consideration"); *Wells v. Hughes' Ex'r*, 89 Va. 543, 549, 16 S.E. 689,

691 (1893) ("debtor's paying a part, or promising to pay the whole debt, which he was bound to

pay, is no consideration."); *see also Employer-Teamsters Joint Council No. 84 v. Weatherall

Concrete, Inc.*, 468 F. Supp. 1167, 1170 (S.D.W. Va. 1979) (finding if one has a pre-existing

duty "to pay a liquidated sum of money, any subsequent agreement to pay a lesser sum must fail

for lack of consideration.  If the sum promised is less than the original debt, the debtor's promise

is only to perform part of a duty already owing and, therefore, does not constitute sufficient

consideration for a new agreement.").

Plaintiff had a pre-existing legal obligation to make payments in accordance with her

original loan agreement.  Participation in the TPP did not relieve plaintiff of her obligations to

repay her loan, as the TPP expressly emphasized:

> [A]ll terms and provisions of the Loan Documents remain in full
> force and effect; nothing in this Plan shall be understood or
> construed to be a satisfaction or release in whole or in part of the
> obligations contained in the Loan Documents.  The Lender and I
> will be bound by, and will comply with, all of the terms and
> provisions of the Loan Documents.

(Exhibit 3 at ¶ 4(D).)  Moreover, all payments made under the TPP were to be held and

ultimately applied to the borrower's existing loan and obligations, in the event that a permanent

modification was not ultimately extended.  (*Id.*, at ¶¶ 2(D), (F).)  The TPP payments did not

provide Chase with windfall revenues, nor did they result in the borrower making additional

outlays.  The money went precisely where it was already obligated to go – to paying down the

borrower's existing loan balance.

Plaintiff alleges she provided adequate consideration by supplying financial information

to Chase.  (Am. Compl. ¶ 125.)  Several courts have squarely rejected this argument because

providing information is a condition to participation in the TPP, not bargained-for consideration in exchange for a permanent modification. *See, e.g., Barinaga v. JPMorgan Chase & Co.*, No. 10-cv-0266, 2010 U.S. Dist. LEXIS 114245, at *16-17 (D. Or. Oct. 26, 2010) ( "compiling and providing financial information along with a detailed [HAMP] loan modification application" is not consideration); *Mizrahi v. Wells Fargo Home Mortg.*, No. 2:09-cv-01387, 2010 U.S. Dist. LEXIS 59893, at *9 (D. Nev. June 16, 2010) ("providing the requested documents was simply a part of the application process, which the [plaintiffs] were willing to complete in the hope that [defendant] would modify their loan" under HAMP); *see also* 3 Richard A. Lord, *Williston on Contracts* § 7:18 (4th ed. 2008) (A "condition of a promise" is not consideration if "a reasonable person . . . would not understand that performance of the condition was requested as the price or exchange for the promise."). As these courts found, the transmittal of documentation was simply a condition for Chase to analyze plaintiff's eligibility for a possible permanent modification. Plaintiff's contract claim therefore fails for lack of consideration.[4]

## II.     PLAINTIFF DOES NOT STATE A CLAIM UNDER SECTION 1681m OF FCRA (COUNT II).

Plaintiff cannot state a claim under 15 U.S.C. § 1681m because no private right of action exists under that section of FCRA. Plaintiff alleges Chase willfully and negligently violated this FCRA provision by failing to provide a FCRA disclosure — called an "adverse action" notice — when Chase determined she was not eligible for a final loan modification. (Am. Compl. ¶¶ 139-140.) However, in amending FCRA in 1993, Congress specifically eliminated private civil

---

[4] Nor can Plaintiff fall back on an "alternative" estoppel theory (Am. Compl. ¶ 128) for the simple reason that "promissory estoppel is not a cognizable cause of action in Virginia." *W.J. Schafer Assocs.*, 254 Va. at 521, 493 S.E.2d at 516 (reversing trial court judgment on promissory estoppel claim and holding such a cause of action does not exist in Virginia.); *see also Mongold v. Woods*, 278 Va. 196, 677 S.E.2d 288, 292 (2009) (citing *W.J. Schafer Assocs.*, 254 Va. at 521, 493 S.E.2d at 516, and refusing to recognize promissory estoppel as cognizable in Virginia).

actions for alleged violations of 15 U.S.C. § 1681m.  *See* Fair and Accurate Credit Transactions

Act of 2003, 108 Pub. L. No. 108-159, 117 Stat. 1952 ("FACTA").  Section 1681m is the sole

statutory basis for the FCRA's adverse action obligations and, not surprisingly, the sole basis

upon which plaintiff's adverse action claim is predicated.  15 U.S.C. § 1681m; Am. Compl.

¶ 131-144.  As amended, this section provides:

> Enforcement
>
> (A)   No civil actions.
>
> Sections 1681n and 1681o of this title **shall not apply to any**
> **failure by any person to comply with this section**.
>
> (B)   Administrative enforcement.
>
> This section shall be enforced exclusively under section 1681s of
> this title by the Federal agencies and officials identified in that
> section.

15 U.S.C. § 1681m(h)(8) (emphasis added) (hereinafter "Enforcement Language").

The Enforcement Language is plain and unambiguous.  Under the title "No civil actions,"

it states that "Sections 1681n and 1681o of this title" – the only sections authorizing private civil

actions for FCRA violations – "shall not apply to any failure by any person to comply with this

section."  Courts have routinely and almost uniformly dismissed FCRA "adverse action" claims

like plaintiff's claim for this reason.  *See, e.g., Perry v. First Nat'l Bank*, 459 F.3d 816, 823 (7th

Cir. 2006) ("The unambiguous language of § 1681m(h)(8) demonstrates that Congress intended

to preempt private causes of action to enforce § 1681m."); *Soroka v. JP Morgan Chase & Co.*,

500 F. Supp. 2d 217 (S.D.N.Y. 2007) (same); *Gelman v. State Farm Mut. Auto. Ins. Co.*, No. 06-

5118, 2007 U.S. Dist. LEXIS 58237 (E.D. Pa. Aug. 9, 2007), *aff'd*, 583 F.3d 187 (3d Cir. 2009);

*White v. E-Loan, Inc.*, 409 F. Supp. 2d 1183, 1187 (N.D. Cal. 2006) (same); *Villagran v. Cent.*

*Ford, Inc.*, No. H-05-2658, 2006 U.S. Dist. LEXIS 84148 (S.D. Tex. Nov. 20, 2006) (same).

One exception, however, is *Barnette v. Brook Road, Inc.*, 429 F. Supp. 2d 741, (E.D. Va. 2006). There, another court in this District interpreted the Enforcement Language to apply only to subsection 1681m(h) rather than section 1681m, concluding use of the word "'section' instead of 'subsection' in [the Enforcement Language] was a drafting error." *Id.* at 749. The court relied on a specification by Congress that its amendments were not intended to "affect any liability" under sections 1681n and 1681o. *Id.* at 747 (quoting 15 U.S.C. § 1681n).

Over 25 federal courts have disagreed with this reasoning. *See, e.g., Perry*, 459 F.3d at 823 (collecting cases); *Tobler v. Equifax*, No. 08-cv-12610, 2009 U.S. Dist. LEXIS 44340, at *8 (E.D. Mich. May 27, 2009) (collecting cases); *Gelman*, 2007 U.S. Dist. LEXIS 58237, at *27 (collecting cases); *Villagran*, 2006 U.S. Dist. LEXIS 84148, at *11 (collecting cases).

As the Seventh Circuit pointed out, the provision relied on by the *Barnette* Court "says nothing about who has the right to bring suit to hold responsible parties liable under §§ 1681n and 1681o." *Gelman*, U.S. Dist. LEXIS 58237, at *28 (quoting *Perry*, 459 F.3d at 823). The Enforcement Language does not affect a defendant's potential liability for violations of § 1681m, but rather specifies that this section is enforceable only by the federal agencies and officials identified in 15 U.S.C. § 1681s. *Id.* at *28-29.

For that reason, this Court should follow the result reached by the Seventh Circuit and the more than twenty-five other courts that have held that there is no private right of action under 1681m and dismiss Plaintiff's FCRA claim based on this section.

## III. PLAINTIFF FAILS TO STATE A CLAIM FOR A VIOLATION OF ECOA OR THE STATE-LAW STATUTORY ANALOG (COUNT THREE).

ECOA requires a creditor that takes "adverse action" on a consumer credit application to provide a "statement of reasons" for the adverse action. 15 U.S.C. § 1691(d). Plaintiff alleges Chase violated ECOA by failing to send letters informing unspecified consumers they were

denied for a permanent loan modification, by failing to provide an adequate statement of reasons

for its adverse action, and by failing to provide the statutory disclosures required by ECOA.

(Am. Compl. ¶¶ 154-57.)  This claim fails, though, because Chase did not take an "adverse

action" against plaintiff.

Under the statute "adverse action" is defined as:

> a denial or revocation of credit, a change in the terms of an existing
> credit arrangement, or a refusal to grant credit in substantially the
> amount or on substantially the terms requested. ***Such term does
> not include a refusal to extend additional credit under an
> existing credit arrangement where the applicant is delinquent or
> otherwise in default.***

15 U.S.C. § 1691(d)(6) (emphasis added); *see also* 12 C.F.R. § 202.2(c)(1)(ii) ("[A]dverse

action" does not include "[a]ny action or forbearance relating to an account taken in connection

with inactivity, default, or delinquency as to that account.").  Therefore, ECOA does not require

a creditor to provide any notification to a borrower who is delinquent.  *See Howard v. Brim*, No.

06-cv-070, 2006 U.S. Dist. LEXIS 37956, at *16 (W.D.N.C. June 8, 2006) (dismissing ECOA

claim, "[s]ince [Defendant's] alleged refusal to extend additional credit to Plaintiffs resulted

from Plaintiffs' own delinquency, Plaintiffs cannot show that Defendant took adverse action

against them. . . . In sum, no adverse action occurred."), *aff'd*, 224 Fed. Appx. 268 (4th Cir.

2007) (*per curiam*).

Here, plaintiff's allegations make plain that she was delinquent because she did not make

all of her mortgage payments when due. (*See* Am. Compl. ¶ 54.)  As such, she fails to identify

any "adverse action" for which notice was required.[5]

---

[5] The Virginia ECOA tracks the federal ECOA statute, specifically excluding any action taken
where the applicant is delinquent or in default, so plaintiff may not pursue a state-law ECOA
claim either. Va. Code Ann. § 6.2-500 (2010).

Plaintiff's ECOA claim fails for the independent reason that she does not allege how the denial letter she received was deficient, or any facts supporting the bald legal conclusion that any such violation caused her any pecuniary loss.  Rather, plaintiff simply states in conclusory fashion that the ECOA violation entitles her to attorney's fees, costs and punitive damages.  (*See* Am. Compl. ¶¶ 157, 158).  As such, even putting aside the substantive deficiency, her ECOA claim is not plead with the requisite specificity, and should be dismissed.  *See Iqbal*, 129 S. Ct. at 1949-50, *Twombly*, 550 U.S. at 570.

## CONCLUSION

For the foregoing reasons, Chase respectfully requests that the Court dismiss Counts One, Two and Three of Plaintiff's Amended Complaint.

WHEREFORE, Defendants, by counsel, respectfully requests that the Court: (1) grant

their motion to dismiss; (2) dismiss Counts One, Two and Three of the Amended Class

Complaint; (3) award Chase its costs and expenses incurred herein; and (4) award Chase such

further relief as the Court deems appropriate.

Dated: January 7, 2011                    Respectfully submitted,

                                          **JPMORGAN CHASE BANK, N.A. and CHASE
                                          HOME FINANCE, LLC**

                                          By:    _/s/ David N. Anthony_
                                                 David N. Anthony
                                                 Virginia State Bar No. 31696
                                                 *Attorney for JPMorgan Chase Bank, N.A.
                                                 and Chase Home Finance, LLC*
                                                 TROUTMAN SANDERS LLP
                                                 1001 Haxall Point
                                                 Richmond, Virginia 23219
                                                 Telephone: (804) 697-5410
                                                 Facsimile: (804) 698-5118
                                                 Email:david.anthony@troutmansanders.com

                                                 Nancy R. Thomas (Admitted *Pro Hac Vice*)
                                                 *Attorney for JPMorgan Chase Bank, N.A.
                                                 and Chase Home Finance, LLC*
                                                 MORRISON & FOERSTER LLP
                                                 555 West Fifth Street, Suite 3500
                                                 Los Angeles, CA 90013-1024
                                                 Telephone: (213) 892-5200
                                                 Email: NThomas@mofo.com

                                                 Tim A. O'Brien (Admitted *Pro Hac Vice*)
                                                 *Attorney for JPMorgan Chase Bank, N.A.
                                                 and Chase Home Finance, LLC*
                                                 MORRISON & FOERSTER LLP
                                                 2000 Pennsylvania Ave., NW, Suite 6000
                                                 Washington, D.C. 20006-1888
                                                 Telephone: 202.887.1500

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of January, 2011, I electronically filed the foregoing

Defendants' Memorandum in Support of Motion to Dismiss Counts One, Two and Three of the

Amended Class Complaint with the Clerk of the Court using the CM/ECF System which will

then send a notification of such filing (NEF) to the following:

> Leonard A. Bennett, Esq.
> Robin A. Abbott, Esq.
> Gary L. Abbott, Esq.
> CONSUMER LITIGATION ASSOCIATES, P.C.
> 12515 Warwick Boulevard, Suite 201
> Newport News, VA  23606
> Telephone:  757-930-3660
> Facsimile:  757-930-3662
>
> *Counsel for Plaintiff*

> /s/ David N. Anthony
> David N. Anthony
> Virginia State Bar No. 31696
> *Attorney for JPMorgan Chase Bank, N.A. and*
> *Chase Home Finance, LLC*
> TROUTMAN SANDERS LLP
> 1001 Haxall Point
> Richmond, Virginia  23219
> Telephone No.: (804) 697-5410
> Facsimile No.:  (804) 698-5118
> Email:  david.anthony@troutmansanders.com

la-1101496