UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICHELLE BOURDELAIS,
on behalf of herself and on behalf
of all others similarly situated,

      Plaintiff,

v.                           Civil Action No. 3:10cv670

JPMORGAN CHASE BANK, N.A.
and CHASE HOME FINANCE, LLC,

      Defendant.

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS ONE, TWO AND THREE OF AMENDED COMPLAINT

COMES NOW the Plaintiff, MICHELLE BOURDELAIS, on behalf of herself and on behalf of all others similarly situated, by counsel, and for her Memorandum in Opposition to Defendants' Motion to Dismiss Counts One, Two and Three of the Amended Class Complaint, she states as follows:

## I.    INTRODUCTION

Plaintiff Michelle Bourdelais ("Plaintiff") opposes the Motion to Dismiss of Defendant J.P. Morgan Chase Bank, NA. ("Defendant" or "Chase").  In 2009, the federal government created a program – the Home Affordable Modification Program or "HAMP" – which was explicitly designed to prevent foreclosures.  Chase signed up to participate.[1]  The aim of the program is to provide incentives for servicers to modify loans.  The form contract that lies at the heart of this case, known as the Trial Period Plan

---

[1] Although Chase's participation was voluntary, it was done against the backdrop of its acceptance of $25 billion in funds from the United States Government as part of the Troubled Asset Relief Program ("TARP"), 12 U.S.C. § 5211.  *See* Am. Compl.  ¶¶ 30-31.

("TPP") Agreement, draws on HAMP as the source of its governing terms and principles, but is otherwise a contract between the consumer and the mortgage company.

Nevertheless, this case does not seek to prosecute a claim under HAMP. It does not argue that Chase or any other TARP recipient was obligated to the Plaintiff because of that program. HAMP is simply the context of the case. Background. Whether Chase had to contract with Plaintiff for a TPP agreement is irrelevant, the reality is that it did so. Whether Chase was required by law to enter into such an agreement is immaterial. In this case – unlike literally 100% of the HAMP cases cited by Chase – Plaintiff has alleged that Chase's failure to follow through with the TPP agreement was itself a breach of contract.

However, before the Court again buries itself in this and Chase's briefing, Plaintiff will suggest what Defendant withholds – there is nothing new, complicated or remarkable in the present motion. It has all been previously briefed, argued and decided in other federal court, including as recently as January 26, 2011. *Bosque v. Wells Fargo Bank, N.A.*, CIV.A. 10-10311-FDS, 2011 WL 304725 (D. Mass. Jan. 26, 2011); *Durmic v. JPMorgan Chase Bank, NA*, 10-CV-10380-RGS, 2010 WL 4825632, n.9 (D. Mass. Nov. 24, 2010). In these cases, plaintiffs pled the same breach of contract claim. In *Durmic v. JPMorgan Chase*, the mortgage company was defended by the same lead counsel as in this case.[2] It is troubling that amongst the clutter of tangentially relevant "HAMP does not provide a private cause of action" cases (supporting a facially obvious and unremarkable proposition) that Chase now withholds from the Court the only law actually on point. While, of course, this Court will properly exercise its own judgment

---

[2] *Morrison and Foerster* is lead in the Chase cases.

and render the decision it deems proper notwithstanding what other Chase and TPP cases have held, there really is no substantive difference between the arguments Chase now offers in this case and those it unsuccessfully offered previously.  In fact, a comparison of briefs in the cases evidences a near total repeat of the same structure, language and arguments.

Defendant also challenges this District's now uniform adoption of the minority view that the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681m(a), remedy was not expressly repealed by amendment.  As addressed below, every judge in this District to consider the question has held as Judge Lauck originally did in *Barnette v. Brook Road, Inc.* 429 F.Supp.2d 741 (E.D.Va. 2006).  It is a correct decision.  There are none in conflict that are as comprehensive and fully reasoned as this District's decision.    And as well, there is not one decision in Virginia or even the Fourth Circuit to have adopted the Illinois view.

Lastly, Defendant also asserts a set of facts 180 degrees opposite to those alleged in the Amended Complaint to support its opposition to the Plaintiffs' Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691(d) claim.  Chase incorrectly assumes that the Plaintiff was in default when she applied for a loan modification (or maybe it does not assume such, but instead simply retained language from its briefs in previous cases.)  The Plaintiff was not in default – that's really the point of much of Ms. Bourdelais' claims. (Am. Compl. ¶¶ 50, 55).

## II.    DEFENDANT'S MOTION IS BOUND BY THE FACTS ALLEGED IN THE AMENDED COMPLAINT

The Plaintiff filed her Amended Complaint on December 17, 2010, clarifying the identity of the relevant Chase defendants.  (Docket #14).  It is 43 pages long with 187

numbered paragraphs, 87 of which contain the Plaintiff's factual allegations (Am. Compl. ¶¶ 24-111).  In its Answer, Chase properly denied or refused to admit nearly all of these. It is not proper, however, that Chase now attempts a Rule 12(b)(6) motion premised not on the facts as Plaintiff plausibly alleges, but instead on its own intended defense and denial of these allegations.  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009)(stating that the facts alleged by the Plaintiff must be taken as true for the purpose of deciding a motion to dismiss under Rule 12(b)(6)).  Further, Plaintiff's allegations are to be considered in the light most favorable to the Plaintiff.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009)(reasoning that "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint."). Generally, dismissals under Rule 12(b)(6) are disfavored by the courts. *Fayetteville Invs. v. Comm'l Builders, Inc.,* 936 F.2d 1462, 1471 (4th Cir.1991).

Repeatedly, Chase's memorandum ignores the standard for dismissal under Fed. R. Civ. P. 12(b)(6), inappropriately disputing multiple allegations of the Complaint.  A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint but it specifically does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). Chase does not even begin to address the Amended Complaint until page 11 of its 24-page brief.  This mistake is fatal to its motion.  Because the Court "must assume that the allegations of the complaint are true and construe them in the light most favorable to the plaintiff" where Defendant argues the facts, the motion should be ignored.  *Id.,* 980 F.2d at 952.

*The alleged facts most material to the present motion are as follows:*

The Plaintiff and her husband had a Chase mortgage dating back to 2006. The Plaintiff and her husband consistently paid their mortgage on time. (Id., ¶¶ 50, 55).

The Plaintiff and her then husband both lost their jobs in January 2009.  (Id.,¶ 51). In June 2009 they would separate with the Plaintiff and her two young children residing in the home.   (Id.,¶ 58).

In March 2009, the Plaintiff submitted her completed application for a HAMP modification.  (Id., ¶ 52).   In May 2009 Chase sent a response, instructing the Plaintiff to make a reduced payment for forbearance for June and July 2009 in order to remain current and avoid default.  (Id., ¶ 57).  She made all of these payments on time and as instructed.  (Id.).

On or about August 1, 2009 ***Chase*** forwarded to the Plaintiff a document entitled "Home Affordable Modification Trial Period Plan (Step One of Two Step Documentation Process)", which stated that the plan was effective on August 1, 2009 and would run from August 2009 to October 2009.  The Plaintiffs monthly mortgage payments were reduced to the amount of $1,535.57.   The Plaintiff and forwarded all of the required documentation back to ***Chase.*** (Id.,¶ 59).

This Trial Period Plan Agreement was entitled "Home Affordable Modification Program Loan Trial Period," and the first sentence of the agreement provides: "If I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement, as set forth in Section 3 [below], that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage." Section 3 of the

Trial Period Contract Agreement references the means by which the principal balance and monthly payment amounts of the permanent modification will be calculated.  (Id.,¶ 60).

The Trial Period Plan Agreement further provides in Section 2 that the Loan Modification Agreement will be effective on "the first day of the month following the month in which the last Trial Period Payment is due," and that "TIME IS OF THE ESSENCE." (Id.,¶ 61).

Plaintiff timely made each of the payments provided for in the Trial Period Contract Agreement due in August, September and October 2009. She has also timely made payments for October, November and December 2009 and February 2010 through the present, consistent with her Trial Period Plan Agreement payment amount.  (Id.,¶ 62).

Unlike payments made pursuant to plaintiff's loan agreement with Chase, Chase did not apply these payments to reduce, even in part, the principal ba3lance on plaintiff's loan, but rather placed said payments in an escrow account.  (Id.,¶ 63).

At Chase's insistence under the TPP, the Plaintiff recorded a Quit Claim deed between the Plaintiff and her ex-husband in order to transfer the property ownership solely to the Plaintiff.   (Id.,¶ 78).

A HAMP Modification consists of two stages. First, a Participating Servicer gathers information and, if appropriate, offers the homeowner a Trial Period Plan.[3]  The Trial Period Plan defines a three-month period in which the homeowner makes mortgage

---

[3] The eligibility criteria for HAMP, as well as the formula used to calculate monthly mortgage payments under the modification, are explained in detail in SD 09-01, attached hereto as Exhibit 2. Generally speaking, the goal of a HAMP modification is for owner-occupants to receive a modification of a first-lien loan by which the monthly mortgage payment is reduced to 31% of their monthly income for the next five years.

payments based on a formula that uses the initial financial information provided.  (Id.,¶ 36).

Chase offers Trial Period Plans to eligible homeowners by way of a Trial Period Plan Agreement, which describes the homeowner's duties and obligations under the plan and contractually promises a permanent HAMP modification for those homeowners that execute the agreement and fulfill the documentation and payment requirements.  (Id.,¶ 37).  If the homeowner executes the Trial Period Plan Agreement, complies with objective documentation requirements and makes all three Trial Period Contract monthly payments, the second stage of the HAMP process is triggered, in which the homeowner is offered a permanent modification.  (Id.,¶ 38).  There is no lender or servicer discretion involved or permitted.   Once the servicer/lender contracts a Trial Period Plan, the consumer will be entitled to a permanent modification so long as they produce the defined set of documents required to verify the facts previously stated and also comply with the plan payment requirements during the Trial Period.  Further, the terms of that permanent modification are also non-discretionary and are objectively determinable for each consumer based on the "waterfall" analysis required under the HAMP program. (Id.,¶ 39).

The only obligations on a consumer such as the Plaintiff after the Trial Period Plan Agreement is contracted as stated in the HAMP Servicer checklist: "For Modification Agreement to be executed— Borrowers must successfully complete trial period and return two signed Home Affordable Modification Agreements to the servicer."  Home Affordable Modification Program (HAMP):  Checklist for Getting Started and Participating in HAMP, February 22, 2010, Exhibit 8.  (Id.,¶ 99).

Over the year and a half since the TPP was contracted, Chase failed to forward the Plaintiff's permanent loan modification.  Instead, it has sent to the Plaintiff on almost a monthly basis various form letters telling Ms. Bourdelais that she had not provided the documents that Chase had requested (she had).  Despite that the Plaintiff had already provided a full set of her personal documents at Chase's insistence under the TPP, Chase insisted on at least a dozen more occasions that Plaintiff again produce these documents – financial statements, bank statement, unemployment insurance records, child support records, tax returns, etc.  (Alleged in multiple paragraphs, *Id*., ¶¶ 62-101).

During this same period, the Defendant has threatened the Plaintiff with foreclosure – despite that she was never in default.  (Alleged in multiple paragraphs, *Id*., ¶¶ 62-101).

On or about June 17, 2010, **Chase** forwarded a copy of a letter addressed to the Plaintiff to Senator Mark Warner's office purportedly responding to the Plaintiff's letter to Mark Warner dated May 17, 2010 regarding her issues with **Chase**.  The letter stated that the Plaintiff was ineligible for the *HAMP* program because of the Net Present Value Determination (NPV) made by **Chase**.[4]  Plaintiff has never personally received an original letter from **Chase** as addressed – a copy of this letter was sent solely to Mark Warner's office and Mark Warner's office subsequently faxed a copy of the letter to her. This was the only written statement the Plaintiff has seen attempting to explain Chase's reason for denying her permanent modification.  (Id.,¶ 95).

---

[4]  The "Net Present Value Determination" is one of the eligibility factors a servicer is to determine before agreeing to contract a Trial Period Plan.  Essentially, it tries to determine if the lender would be better off if the mortgage loan was foreclosed as opposed to modified.

### III.   ARGUMENT

**A.   THE AMENDED COMPLAINT PLEADS A PLAUSIBLE BREACH OF CONTRACT CLAIM.**

**1.   Plaintiff does not allege that HAMP has a Private Cause of Action.**

Using its apparently canned brief, Chase again claims that Plaintiff's straightforward breach of contract claim is an attempted "end-run around HAMP's lack of a private right of action[.]" (Def.'s Mem. at 13).   Addressing Chase's identical language and rejecting its identical argument in *Durmic*, the District Court stated:

> Chase accuses plaintiffs' of attempting an "end-run around HAMP's lack of a private right of action" by bringing their lawsuit on a contract theory. Def.'s Mot. to Dismiss at 10. As plaintiffs point out, none of the cases Chase cites relate to the TPP at issue in this case. "It is the [TPP] contract-not HAMP-that Plaintiffs seek to enforce." Pls.' Opp'n Mot. to Dismiss at 7.

*Durmic v. JPMorgan Chase Bank, NA*, 10-CV-10380-RGS, 2010 WL 4825632, n.9 (D. Mass. Nov. 24, 2010).   As in *Durmic*, in Chase's present motion it again suggests a list of cases that mention "HAMP" or "loan modification" or possibly various other search terms, but substantively have absolutely nothing to do with the present matter. (Def.'s Mem. at 5-7).

Not a single one of the HAMP cases cited by Chase depends on the form contract that is at the center of this dispute.   Instead, the cases cited by Chase stand for one of three propositions.   First, Chase cites cases brought on the theory that the contract *between the servicer and the Treasury Department* is intended to benefit borrowers. (Def.'s Mem. at 6-7).   *See, e.g., Escobedo v. Countrywide Home Loans, Inc.*, No. 09-cv-1557, 2009 U.S. Dist. LEXIS 117017, at *4-7 (S.D. Cal. Dec. 15, 2009)).   Plaintiff does not claim she is a third-party beneficiary under HAMP's servicer agreements.   The

contract at issue in the Amended Complaint is altogether different – it is an agreement directly between the borrower and Chase.   Second, Chase cites opinions that have rejected claims based on due process theories.  *See, e.g., Williams v. Geithner*, No. 09-1959, 2009 U.S. Dist. LEXIS 104096 (D. Minn. Nov. 9, 2009).  Plaintiff has not brought that claim either.   Third, Chase cites cases holding that HAMP and its enabling legislation do not provide for a private right of action. (Def.'s Mem. at 5) *See, e.g., Marks v. Bank of Am,, N.A.*, No. 03:10-cv-08039-PHX-JAT, 2010 U.S. Dist. LEXIS 61489 (D. Ariz. June 22, 2010).  Plaintiff does not seek to enforce HAMP directly, but rather she seeks to enforce the contract that obligated Chase to implement a non-discretionary HAMP modification in the circumstances present here.

Chase's accusation that Plaintiff here is performing an "end-run" around the lack of a private cause of action in HAMP is misleading and wrong.  It is clear that Plaintiff has not brought a cause of action under HAMP because her claim does not arise unless and until the TPP Agreement is breached.  It is the contract – not HAMP – that Plaintiff seeks to enforce.[5]

Chase cites two HAMP (or loan modification) decisions in this District.  The Eastern District of Virginia cases were dismissed because, they held, there is no private right of action or third-party beneficiary claim under HAMP. Plaintiff's counsel was not involved in those cases and, as with all other Chase-cited HAMP cases, none are relevant

---

[5] Simply because the contract at issue here was made as part of a federal program, drawing on that program as the source of certain principles of the agreement, does not render it unenforceable.  Were the case otherwise, a court would not be able to enforce a contract touching on issues of federal law, where that law was devoid of a private right of action.  This is not so. *See, e.g., Chalfin v. Beverly Enterprises, Inc.*, 741 F. Supp. 1162, 1178 (E.D. Pa. 1989) (ruling that genuine issues of material fact exist on claim for breach of nursing home resident's contract made in context of federal and state health care laws that did not contain a private cause of action).

to the present TPP breach of contract claim.  Still, out of caution to stem diversion, a brief

discussion of these inapposite cases is nonetheless appropriate.

First, in *Pennington v. PNC Mortgage, at al.*, No. 2:10cv361 (Doumar,

J.)(E.D.Va. Aug. 11, 2010), the Plaintiff there filed a Bill of Complaint in state court,

removed on July 23, 2010, by the Defendants to the United States District Court based on

Plaintiff's allegations of violation of HAMP by PNC.  *Id*. (Docket #1).   On August 10,

2010, the *Pennington* Defendants filed motions to dismiss.  *Id*. (Docket ##4, 6, 8, 11).

The docket reflects that the Court dismissed the Plaintiff's complaint the very next day

without the benefit of briefing from the Plaintiff, and remanded the remaining claims

back to state court. *Id*. (Docket ## 13-15).   The court found that the Plaintiffs failed to

allege that they were parties to or in privity with Fannie Mae, and thus their HAMP-

related claims must be dismissed.  Relying on the same cases that deal only with claims

to enforce the agreement between the banks and Fannie Mae, the court found there were

no private nor third-party causes of action under HAMP.  *Id*.

Shortly after the *Pennington* case was dismissed and remanded, the same counsel

represented the plaintiff in *Winn v. Chase Mortgage Servs*., *et al*., No. 2:10cv395

(Jackson, J.) (E.D.Va. Oct. 29, 2010).  As in *Pennington*, the Plaintiff had filed a Bill of

Complaint in state court.  The Complaint did not plead breach of contract related to a

TPP.  Instead, the Plaintiff alleged, among other things, that Chase violated its HAMP

obligations and the HAMP supplemental directive. *Id.* (Docket #1-1) The Plaintiff

alleged she submitted a completed borrower's assistance form and required

documentation, but was refused a loan modification based on Chase's determination that

she had the ability to pay the full amount of her mortgage obligation.  *Id*.  There is no

allegation in the *Winn* Bill of Complaint that Plaintiff was granted a TPP, which was subsequently breached.  *Id*.  Chase and the other Defendants moved to dismiss on the grounds that there is no private right of action authorized by HAMP.  *Id*. (Docket ## 4, 7).  Despite the fact that the Plaintiff pled other causes of action in addition to the HAMP-related claims, she did not file an opposition to the Motion to Dismiss. The court adopted the reasoning in the Defendants' motion and dismissed the entire case holding that the Plaintiff had not private cause of action under HAMP and that she had no cognizable breach of contract claim as a third-party beneficiary.  *Id.* at 4.  In *Winn*, the court relied on the cases cited by Chase:  *Marks v. Bank of America* (D. Ariz.); *Hoffman v. Bank of America* (N.D. Cal.); *Simon v. Bank of America*;  and of course, *Pennington v. PNC Mortgage* (E.D.Va.).

In both of these cases, the complaints sought to enforce an alleged right ultimately to a permanent loan modification, not for the well-pled breach of the TPP contract that occurred directly between the plaintiff and the lender or servicer.  In the present case, the Plaintiff has pled breach of contract, a theory not addressed in either the *Winn* or the *Pennington* cases.  In this case, Plaintiff does not seek to enforce a private cause of action to enforce a term arising under HAMP in contracts between Chase and Fannie Mae or Chase and the Department of Treasury.  Instead, the Plaintiff in this case seeks to enforce a contract, voluntarily made between herself and Chase Bank. Therefore, neither *Winn* nor *Pennington* have any bearing on the legal question presented in this case: whether Chase Bank breached its obligations under an agreement it entered with the Plaintiff.

There is no private right of action under HAMP.  Even claims that the consumer is a third party beneficiary of the agreement between the Department of Treasury and

mortgage servicers may not be viable.  And present plaintiff's counsel has not brought

such a claim – not in this case nor in any other.     Instead, this is a case limited to the

narrow subset of consumers who actually applied for a loan modification, received

approval and had such approval documented by the non-discretionary TPP.  Their rights

arise only from that contractual modification.  Put another way – remove any reference to

HAMP.  Then assume a case in which a consumer applied for a refinance or modification

of their mortgage, the lender approved it, and then documented the agreement in writing.

Thereafter the consumer did everything the agreement required, including payment as

obligated.   Six months later the lender then sends the consumer a letter that states:  "We

change our mind.  We are revoking your refinance/modification."  That is this case.

Chase can in good faith, if incorrectly, argue that the contract, the TPP, was incomplete

or lacked consideration and so was not binding, or that the Plaintiff never performed as

required.   But it cannot in good faith argue to the Court that the string of "no private

cause of action" have anything to do with Ms. Bourdelais' claims in this case.

The most recent decision to consider the same arguments now attempted by Chase

was rendered on January 26, 2011, as to its industry rival, Wells Fargo.  In rejecting the

same arguments now offered by Chase, the Court stated:

> Defendant first contends that plaintiffs have no standing to bring this suit
> because neither the EESA nor the HAMP guidelines extend to borrowers a
> private right of action. Defendant acknowledges that plaintiffs have
> brought four state-law claims, not claims under HAMP or the EESA, but
> contends that plaintiffs are attempting to "use state law as an indirect
> means to enforce HAMP. In support of this argument, defendant cites
> various cases holding that HAMP provides no private right of action. . . .
>
> **Whether HAMP creates a private right of action or a cognizable**
> **property interest is not the issue in this case. Plaintiffs have brought**
> **suit on the theory that the TPP constituted a contract between**
> **defendant and plaintiffs, and that defendant breached that contract.**

> **Their claims arise under defendant's alleged failure to comply with its contractual obligations in the TPPs.**
>
> Nevertheless, defendant contends that because the TPPs originated out of the HAMP program, plaintiffs cannot vindicate any rights that relate to HAMP. That argument is plainly without merit. Defendants do not contend that the EESA, HAMP, or the HAMP guidelines preempt state-law contract actions. **The fact that a TPP has a relationship to a federal statute and regulations does not require the dismissal of any state-law claims that arise under a TPP. Nor does the fact that the TPP is a form contract created by the government change that analysis. If the TPP is properly construed as a contract between the parties in this case, then plaintiffs have standing to bring suit in order to recover for any breach of that contract**.

*Bosque v. Wells Fargo Bank, N.A.*, CIV.A. 10-10311-FDS, 2011 WL 304725 (D. Mass. Jan. 26, 2011) (bold emphasis added).

      2.     **The Amended Complaint Plausibly alleges that the Plaintiff's TPP was enforceable as a contract.**

      Plaintiff applied for and was determined by Chase to be eligible and qualified for a Home Affordable Modification, and thereafter executed a binding TPP Agreement provided by Chase with an explicit bargained-for exchange -- if a homeowner complied with their TPP Agreement by making three months of trial payments and by providing documentation requested of them to verify the information that initially qualified them for HAMP, Chase promised to tender them a permanent loan modification with definite terms upon completion of the three-month trial period.  Then, Chase insisted that she first negotiate and obtain from her ex-husband a Quit Claim Deed in her name alone.  She did that as well.  The Plaintiff delivered on her end of the bargain – making the payments promised, obtaining a Quit Claim Deed and providing the documentation requested, which verified her eligibility.  Despite this, Chase thereafter refused implement the non-discretionary permanent modification, as contracted.  This important breach of Chase's

obligations forms the basis of Plaintiff's claim.

As Chase and its same counsel did in *Durmic*, Defendant mischaracterizes the nature and substance of a TPP contract.  Contrary to Chase's assertions, <u>TPP Agreements are only given to borrowers who are first determined eligible for HAMP and pass the Net Present Value ("NPV") test</u>[6] on the basis of the information they initially report. The TPP Agreements state that borrowers who fail to provide verification for the oral information used to find them eligible, or whose representations are not true in any material respect *are not in compliance with the TPP Agreement*.  Such borrowers necessarily will qualify for a Home Affordable Modification at the close of the Trial Period.  In the Amended Complaint Plaintiff alleges that she complied with *all* conditions of the TPP Agreement.

The TPP Agreement that lies at the center of this dispute is a form contract between Plaintiff and Chase, as the servicer of her mortgage – the relevant language is identical for each borrower.  *See* Am. Compl., Ex. 3.  The promise on which Plaintiff's claim rests is the first sentence of the TPP Agreement:

> If I am in compliance with this Trial Period Plan, and my representations in Section 1 [regarding verification of information] continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3. . . .

*Id*. at 1.   This promise is repeated in different forms throughout the TPP Agreement.

Section 2(G) states:

> I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents <u>if I fail</u> to meet

---

[6] The NPV test, discussed in more detail below, is a threshold eligibility determination that a HAMP modification will be in the financial interest of the owner of the loan, on whose behalf Chase is acting.

any one of the requirements of this Plan.

Section 3 explains how the permanent loan modification will be calculated. It then

provides:

> If I comply with the requirements in Section 2 [i.e., regarding payment], and my representations in Section 1 [i.e., regarding certifications identified below], continue to be true in all material respects, the Lender *will send me a Modification Agreement* for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date.

(*Id.* ¶ 3); *See also Bosque v. Wells Fargo Bank, N.A.*, CIV.A. 10-10311-FDS, 2011 WL

304725, *3 (D. Mass. Jan. 26, 2011).  As the District Court concluded:

> It is plain that the TPPs were offers, and that plaintiffs' signatures and subsequent monthly payments under the terms of the TPP constituted acceptance of those offers. The TPP denotes the terms and duties that each party must perform under the bargain. In capital letters, it alerts the parties that "time is of the essence" for performance under the terms of the offer. Through its signature line and detailed description of the dates and manner by which the borrower submits monthly payments, the TPP indicates a straightforward method of acceptance. Indeed, the HAMP guidelines refer to the TPP as an "offer" and the monthly payments under it as "contractual payment[s]."

*Id.,* at *5.

Chase argues that the TPP was merely "an agreement to agree."  (Def.'s Mem. at

14-15).  This is incorrect.  Defendant falsely suggests that a borrower's evaluation for

HAMP remains open-ended after the TPP Agreement has been executed by the borrower.

The Amended Complaint describes the contract at issue here as involving a two-step

process in which the borrower is determined eligible for HAMP based on information

collected by Chase prior to the TPP Agreement being sent.  Am. Compl. ¶¶ 36-45.  In

other words, if a borrower has received a TPP Agreement, she has already been

determined initially eligible for the program.  Am. Compl., Ex. 2 at 17-18.  That

determination is subject to confirmation in the form of the trial period, during which

Chase is permitted to validate the information that it used to decide eligibility if it has not already done so, and the borrower is given the opportunity to show that she can make the estimated payments for three months.  *Id.*  If the information on which the initial decision was made is verified, and if the borrower makes all three of her payments during the trial period, as is the case with Ms. Bourdelais, then Chase is required to tender a permanent modification.[7]  Chase's characterization of the timing of eligibility determinations is misleading.  Properly understood, eligibility (including the running of an NPV Test with a positive outcome and a determination of an appropriate monthly payment under the waterfall) is determined prior to Chase's tender of a TPP Agreement, and is merely verified during the trial period. *See* Am. Compl., Ex. 2 at 5-6.  "Servicers may use recent verbal financial information obtained from the borrower and any co-borrower 90 days or less from the date the servicer is determining HAMP eligibility *to assess the borrower's eligibility*. The servicer *may rely on this information to prepare and send to the borrower* a solicitation for the HAMP and *an offer of a Trial Period Plan*. . . . As an alternative, a servicer may require a borrower to submit the required documentation to *verify the borrower's eligibility and income prior to preparing a Trial Period Plan*."  *Id.* (emphasis added).

Chase also falsely suggests that terms of the obligated permanent modification were as of yet undetermined and would require additional discretion of and negotiation with Chase.  This is, again, untrue.  But, even more importantly it is contrary to the well-pled allegations in the Amended Complaint.   As Plaintiff alleges in the Amended Complaint:

---

[7] This promise is repeated throughout the TPP Agreement and is expressly alleged in the Amended Complaint.

> 39.     There is no lender or servicer discretion involved or permitted.
> Once the servicer/lender contracts a Trial Period Plan, the consumer will
> be entitled to a permanent modification so long as they produce the
> defined set of documents required to verify the facts previously stated and
> also comply with the plan payment requirements during the Trial Period.
> Further, the terms of that permanent modification are also non-
> discretionary and are objectively determinable for each consumer based on
> the "waterfall" analysis required under the HAMP program.

Am. Compl. ¶ 39.  The manner in which the permanent modification will be calculated is

detailed stated in the TPP itself.  *See* Am. Compl., Ex. 3, §3.  Regardless, at worst, this

remains a question of fact and is inappropriate for disposition under Rule 12(b)(6).

*Durmic*, 2010 WL 4825632, *4 ("[P]laintiffs argue that the essential terms of a Home

Affordable Modification Agreement are easily determinable through the mathematical

formulas set out in the HAMP regulations and are thus "not open to negotiation or

discretionary alteration by either side." … At the end of the day, the issue is one of the

parties' intent, and cannot be resolved in the context of a motion to dismiss. Chase's

motion to dismiss Count I will therefore be *denied*.")

     The cases offered by Chase in support of its argument are again out of context.

Unlike a discretionary application for a loan, like those considered in Chase's cited cases,

a HAMP program modification is dictated by the program itself.  If the TPP is approved

and delivered in writing (as opposed to an oral promise), interest rates and principal

reductions are determined by objective, uniform and simple math equations.  The details

and terms of implementation for a HAMP permanent modification are already

established.  The only open question in any instance is whether the consumer qualifies for

the TPP.  If so, and if the consumer then performs her obligations under the TPP, the

terms of the permanent modification are pre-determined.  An appropriate analogy would

be a construction contract that included a statement that the builder construct a building

in accordance with the Building Code.    Or a credit instrument that calculates interest increases based upon the most recent Libor or Prime rate published in the Wall Street Journal.  The TPP simply obligated Chase to deliver to the consumer a particular brand of loan modification, with a non-discretionary procedure to objectively calculate the new loan terms.    Contrary to Defendant's apparent assertion that every word of an agreement's implementation must be stated or written within the agreement itself, only the material terms – those that had been discretionary or open to negotiation - must be formally agreed.

     **3.**     **Plaintiff Has Adequately Alleged Consideration.**

The TPP Agreement is supported by legally sufficient consideration. The requirement of consideration is satisfied if there is either a benefit to the promisor or a detriment to the promisee.   As the Court has explained, "The Supreme Court of Virginia has elucidated the concept of consideration as follows":

> **Consideration** is, in effect, the price bargained for and paid for a promise. It may be in the form of a benefit to the party promising or a detriment to the party to whom the promise is made. It matters not to what extent the promisor is benefitted or how little the promisee may give for the promise. **A very slight advantage to the one party or a trifling inconvenience to the other is generally held sufficient to support the promise**. *GSHH-Richmond, Inc. v. Imperial Assocs.,* 253 Va. 98, 480 S.E.2d 482, 484 (1997) (quoting *Sager v. Basham,* 241 Va. 227, 401 S.E.2d 676, 677 (1991)). (bold emphasis added).

*Insight Holding Group, LLC v. Sitnasuak Native Corp.*, 685 F. Supp. 2d 582, 587 (E.D. Va. 2010).  The adequacy of the consideration (its monetary value) is not relevant, so long as there is some consideration.  "A benefit to a promisor can constitute valuable consideration. *White v. Alleghany Mountain Corp.,* 159 Va. 394, 401-02, 165 S.E. 505, 507 (1932). In addition, parties to a contract are at liberty to determine their own valuations, and courts generally will not inquire into the adequacy of consideration."

*Horace Mann Ins. Co. v. Gov't Employees Ins. Co.*, 231 Va. 426, 429-30, 344 S.E.2d 906,

908 (1986)

Plaintiffs have adequately alleged consideration here, both in the form of a benefit

to the promisor and in the form of a detriment to the promisee, as a condition of the TPP

offered by Chase.  The Amended Complaint alleges action taken by the Plaintiff that

would constitute consideration, even beyond making payments as requested.  Each would

constitute at a minimum, "a very slight advantage to the one party or a trifling

inconvenience to the other":

- Rather than make their payments as regularly scheduled towards principal and interest, the Plaintiff agreed to Chase's requirement that they be made into Chase's escrow account. (Am. Compl., ¶ 63, Ex. 2 at 11);

- Furthermore, the TPP Agreement makes clear that Plaintiff's payments are held in accounts maintained by servicers, instead of immediately applied to their loans, making them different in character from the payments Plaintiff was otherwise obligated to make.  *Id.*, Ex. 2 at 2.

- As is apparent from the chronological allegations of fact in the Amended Complaint, the Plaintiff delivered numerous copies of detailed and often personal records and information to Chase that would not have otherwise been required or provided under the existing loan. *Id.* ¶¶ 50 – 77, 80-83.

- Chase also required that the Plaintiff obtain from her ex-husband a quitclaim deed in order to proceed with the permanent modification, a condition that she then accomplished. *Id.* ¶ 17-18.

- Plaintiff became obligated to participate in credit counseling.  *Id.*, Ex. 2.

Each of these alterations in Plaintiff's conduct, each a legal detriment of some degree,

constituted legal consideration.  *See Bosque*, 2011 WL 304725, *6; *Durmic*, 2010 WL

4825632, *3.  Satisfaction of these conditions was requested of Plaintiff by Chase in the

TPP Agreement, and, as discussed below, they improve Chase's position for the purposes

of underwriting the modification and for ultimate payment of the loan as modified.

Before entering into the TPP Agreements, Plaintiff had no obligation to fulfill these conditions.  Thus, they are legal detriments to her – completely apart from any payment of money towards the pre-existing debt – and constitute consideration for Chase's promises to provide a Home Affordable Modification.  "[I]t is a sufficient *legal* detriment to the promisee if it promises or performs any act, regardless of how slight or inconvenient, which it is not obligated to promise or perform so long as it does so at the request of the promisor and in exchange for the promise."  Samuel Williston, *A Treatise on the Law of Contracts* §7:4 (4th ed. 2008).

Additionally, the fact that Plaintiff was required to make payments in specific amounts requested by Chase and differing from her prior obligation independently satisfies the requirement of consideration (and further distinguishes this case from the partial payment cases to which the pre-existing duty exception applies).  The TPP Agreement is an exchange of mutual promises to alter the timing and conditions of payment of a debt.  Such mutually agreed changes in performance constitute consideration:

> Performance of a legal duty owed to a promisor which is neither doubtful nor the subject of honest dispute is not consideration; *but a similar performance is consideration if it differs from what was required by the duty in a way which reflects more than a pretense of bargain*.

Restatement (Second) of Contracts § 73 (emphasis added).  *See also id.*, illustration 7 ("Any payment by A at an earlier time, or in a different medium from that required by the duty, is consideration."); Williston, *supra*, §7:27 ("If a debtor does something more or different in character from that which it was legally bound to do, it will constitute consideration for the promise.").  Defendant itself acknowledges that the TPP payments do not satisfy Plaintiffs pre-existing legal obligations.  Nevertheless, Chase requested that

Plaintiffs make TPP payments instead of paying the pre-existing loan obligation.  Thus, making the TPP payments is a legal detrimental to Plaintiffs.[8]

Although it is unnecessary for Plaintiff, in demonstrating the existence of consideration, to show that Chase also received a benefit from their performance, Chase was in fact benefitted.  Chase performed an NPV test for each Plaintiff before offering a TPP Agreement.  Def.'s Mem. at 4.  As Chase explains in the Motion to Dismiss, "[t]he NPV is essentially an accounting calculation to determine whether it is more profitable to modify the loan or allow the loan to go into foreclosure." Def.'s Mem. at 4, citing *Williams v. Geithner*, 2009 U.S. Dist. LEXIS 104096 at *8-9 n.3 (D. Minn. Nov. 9, 2009).  If Chase did not expect to be benefitted by the TPP Agreements, it would not have extended them to Plaintiffs and requested Plaintiffs' compliance.

The borrower's obligations under the TPP Agreement limited to paying part (or even all) of the pre-existing debt.  Chase's attempt to avoid its contractual obligations by mischaracterizing the agreement as gratuitous debt forgiveness must fail.

---

[8] In attempting to avoid the conclusion that making TPP Payments is a legal detriment to Plaintiffs, Defendant tries to characterize these circumstances as *beneficial* to Plaintiffs. Def.'s Mem. at 13.  Defendant completely ignores both the definition of "legal detriment" and the fact that Plaintiffs must pay every penny of their loan obligations and potentially more, not to mention the increased risk of foreclosure and damage to Plaintiffs' credit scores that result from the deepening arrearages.  Only if Defendant follows through on its promises and provides Plaintiffs with permanent loan modifications, will the lower payments made during the TPP period constitute a benefit to Plaintiffs.  "A promise or an act may be a detriment although *on balance* the promisor is making a good bargain. Thus a promise to pay £10,000 for a Rolls Royce worth £12,000, is nonetheless a detriment." Black's Law Dictionary (8th ed. 2004), detriment (quoting P.S. Atiyah, *An Introduction to the Law of Contract* 101 (3d ed. 1981)).

### B.    THERE IS A PRIVATE CAUSE OF ACTION FOR A VIOLATION OF THE FCRA, 15 U.S.C. §1681m.

Defendant argues that Congress expressly and deliberately repealed a private cause of action for a provision of the Fair Credit Reporting Act, 15 U.S.C. §1681m, which requires a user of credit reports who takes an adverse action upon same to provide a disclosure to the consumer of their right to a free credit report from the relevant bureau. It makes this contention because it can produce a long string cite of cases outside this Circuit that have allowed otherwise.  Defendant asks the Court to ignore the decisions in this District and Division, which admittedly represent the minority view.  *Barnette v. Brook Road*, 429 F.Supp.2d 741 (E.D.Va. 2006)(Lauck, J.); *Jefferson v. Briner Inc.*, 2006 WL 1720692, FN 8 (E.D.Va. 2006)(Dohnal, J.); *Johnson v. Taylor Kia*, Civ. No. 3:06-cv-00600 (E.D. Va. January 26, 2007) (Docket #16) (Spencer, J.)(Denying Rule 12(b)(6) Motion after full briefing and oral argument).

This question was significantly briefed in *Barnette*. The Court's ruling was not taken lightly, as is evident by this District's substantive ruling.  In fact, the Court will be hard pressed to find one opinion in Defendant's string cite that is as significant and exhaustive in its consideration of arguments, case law and the statute as in *Barnette*. There are a number of reasons why the law has developed as it has.  The foremost reason is a particular plaintiff's counsel in all of the Illinois, Indiana and Seventh Circuit decisions.  He filed literally countless class action cases alleging a questionable set of claims and when he lost these, he filed more.  Initially, all were filed in the same courthouse.  And in each, making the same arguments.  Most remarkably, neither that counsel nor the Illinois or Indiana judges ever considered many of the textual and statutory problems posed by the Illinois conclusion and fully considered in this District.

Regardless, it serves little purpose to submit to the Court literally the same stack of briefs considered over a several month period by Judge Lauck.  However, if the Court will consider re-litigation of this question in this District anew, counsel asks for leave to file supplemental briefing to the same extent as was accomplished by Plaintiff's counsel representing other clients before Judges Lauck and Spencer.

### C.    THE AMENDED COMPLAINT ALLEGES AN ECOA CLAIM.

Chase moves to dismiss Plaintiff's claim under the Federal Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691(d), and the Virginia Equal Credit Opportunity Act (VECOA), Va. Code § 6.1- 512.  Defendant failed to provide any lawful adverse action notice and what it did send it sent many months after it was obligated to do so.  As should be apparent from the chronology detailed in the Amended Complaint, there is little more that Chase can argue beyond its suggestion that because the Plaintiff was in default the application for a loan modification was not an adverse action.

Possibly at a later point in the case, there may be a need for an academic exchange as to whether a denial of a HAMP modification application by a consumer in default on their more mortgage constitutes an adverse action.  The definition cited by Chase is correct, but it excludes an application of a defaulted consumer only as to additional credit.  15 U.S.C. § 1691d(6).  A HAMP modification is in fat an application to repay less of the credit already owed.

However, this argument is moot.  To get here, Chase had to misstate the allegations in the Amended Complaint such that they were restated as the exact opposite of what Plaintiff alleged.  When she applied for the modification and then entered the TPP the Plaintiff was not in default on her Chase loan.  And Chase knows that not only

24

from its own records and correspondence, but as well from the unambiguous allegations in the Amended Complaint paragraphs that immediately precede and then immediately follow the one Chase misstates.  In both paragraphs 53 and 55 of the Amended Complaint the Plaintiff alleges that she was never in default on the mortgage.  Paragraph 54, the one cited by Chase does not state that the Plaintiff was ever late, but instead that Chase unsuccessfully tried to convince her to become late on her loan.

Chase similarly ignores Plaintiff's allegations in asserting the second of its ECOA challenges.  Defendant claims that the Plaintiff has not alleged the manner in which Chase violated the ECOA (and VECOA).   This is of course untrue.   The chronology within Plaintiff's factual allegations details how Chase on many occasions continually misrepresented the status of Ms. Bourdelais' application.  The Amended Complaint also alleges that though the HAMP application was complete many months earlier, the Defendant did not provide any written outcome to the application until the Plaintiff wrote to her Senator in late 2010.  The Amended Complaint also alleges that Chase did not send notices that were timely (Am. Compl., ¶ 154), that stated the reasons for a denial decision *Id.* ¶ 155. or that provided any of the mandatory disclosures detailed in the statute.  *Id.* ¶ 156.

## IV.    CONCLUSION

The Plaintiff has demonstrably met the requirements of Rule 8, stating multiple claims upon which relief may be granted.  She has supported these claims with factual allegations sufficient to put Defendants on notice of her claims against them.  Defendants have failed to demonstrate that the Plaintiff's Complaint should be dismissed, and therefore the Plaintiff requests that Defendants' Motion to Dismiss be denied.

Respectfully submitted,

**MICHELLE BOURDELAIS,**

_____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION
ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@cox.net

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of February, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

David Neal Anthony
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23218-1122
E-mail: david.anthony@troutmansanders.com

Nancy Renee Thomas
Morrison & Foerster, LLP
555 West Fifth Street
Suite 3500
Los Angeles, CA 90013
E-mail: nthomas@mofo.com

Timothy A. O'Brien
Morrison & Foerster, LLP
2000 Pennsylvania Avenue NW
Suite 6000
Washington, DC 20006-1888
E-mail: tobrien@mofo.com

                                                  _____/s/_____
                                                  Leonard A. Bennett, Esq.
                                                  VSB #37523
                                                  Attorney for Plaintiff
                                                  CONSUMER LITIGATION
                                                  ASSOCIATES, P.C.
                                                  12515 Warwick Boulevard, Suite 100
                                                  Newport News, Virginia 23606
                                                  (757) 930-3660 - Telephone
                                                  (757) 930-3662 – Facsimile
                                                  lenbennett@cox.net