## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| MICHELLE BOURDELAIS<br>On her own behalf and on behalf of<br>all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>J.P. MORGAN CHASE BANK, N.A.<br>and CHASE HOME FINANCE, LLC,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil No. 3:10CV670–HEH<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION
### (Granting in Part and Denying in Part Defendants' Motion to Dismiss Counts One, Two and Three of the Amended Class Complaint)

This is a putative class action alleging breach of contract and violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681m; the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d); and the Virginia Equal Credit Opportunity Act ("VECOA"), Va. Code Ann. § 59.1-21.21:1. It is presently before the Court on Defendants' Motion to Dismiss Counts One, Two and Three of the Amended Class Complaint.[1] The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. For the reasons stated below, Defendants' Motion will be granted in part and denied in part.

---

[1] Plaintiff's Amended Class Complaint also contains individual claims for defamation and violations of the FCRA and Real Estate and Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e). The instant Motion to Dismiss, however, concerns only Plaintiff's class claims.

## I. BACKGROUND

In response to a growing number of home foreclosures in the United States, the

U.S. Department of the Treasury ("the Treasury") in February 2009 created the Home

Affordable Modification Program ("HAMP").  HAMP aims to prevent avoidable home

foreclosures by encouraging loan servicers to reduce the required monthly mortgage

payments for struggling homeowners.  Specifically, HAMP enables certain homeowners

who are in default or at imminent risk of default to obtain "permanent" loan

modifications, by which their monthly mortgage payments are reduced to not more than

thirty-one percent of their monthly income for a period of at least five years.  Loan

servicers receive from the government a $1,000 incentive payment for each permanent

HAMP modification they offer.

HAMP modifications essentially proceed in two steps.  First, the loan servicer

compares the net present value ("NPV") of a borrower's existing loan with the NPV of a

hypothetical HAMP-modified loan to determine whether it would be more profitable to

modify the borrower's loan or permit it to proceed to foreclosure.[2]  If modification

---

[2] Prior to June 1, 2010, servicers were permitted to rely upon borrowers' unverified verbal representations when determining whether the borrower qualified for a TPP. (*See* U.S. Dep't of the Treasury, Supplemental Directive 09-01, at 6–7, *available at* https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd0901.pdf.)  Borrowers who entered into TPPs on that basis were then required to submit income-verification documentation, which servicers were required to analyze to determine whether the borrower qualified for a permanent modification. (*Id.*)  Although this TPP-first, verification-later procedure allowed servicers to expedite the TPP process and quickly provide relief to struggling homeowners, it resulted in some borrowers who were offered TPPs being found ineligible for permanent modifications.  To remedy this issue, the Treasury on January 28, 2010 issued a Supplemental Directive which, effective June 1, 2010, requires servicers to fully verify a borrower's financial information before offering a TPP. (U.S. Dep't of the Treasury, Supplemental Directive 10-01, *available at* https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd1001.pdf.)

appears to be desirable, the servicer offers the borrower a three-month Trial Period Plan ("TPP"), the terms of which are memorialized in a TPP Agreement. If all conditions of the TPP Agreement are satisfied, the borrower then proceeds to Step Two, at which he or she is offered a permanent loan modification.

Although participation in HAMP is required for government-sponsored entities ("GSEs") such as Fannie Mae and Freddie Mac, HAMP participation is voluntary for non-GSEs. Non-GSE servicers who elect to participate ("Participating Servers") are required to enter into a Servicer Participation Agreement ("SPA") with the federal government which expressly incorporates the Treasury's Program Documentation, including the Treasury's HAMP guidelines, procedures, and supplemental directives.[3] Defendants JPMorgan Chase Bank, N.A. and Chase Home Finance, LLC (collectively, "Chase" or "Defendants"), which operate as a single, non-GSE loan servicer, voluntarily agreed to participate in HAMP in July 2009.

Michelle Bourdelais, formerly Michelle Durniak ("Plaintiff"), is a Virginia homeowner with a $350,800 home mortgage loan currently serviced by Chase. She and her husband allegedly applied for a HAMP modification in March 2009. The couple thereafter separated, but nevertheless entered into a TPP Agreement with Chase in August 2009. Plaintiff alleges that she provided documentation and timely made her

---

Plaintiff in this case applied for a loan modification under the old schema. (*See* Pl.'s Am. Compl. ¶ 52 (noting that Plaintiff applied for a HAMP modification in March 2009).)

[3] Fannie Mae and Freddie Mac have been designated by the Treasury as financial agents of the United States in connection with the implementation of HAMP. (*See* Pl.'s Am. Compl. Ex. 1.) Non-GSE Participating Servicers are required to enter into a SPA with Fannie Mae in its capacity as financial agent for the United States. (*See id.*)

August, September, and October 2009 payments in accordance with the TPP Agreement. Chase, however, never offered Plaintiff a permanent loan modification.

Plaintiff filed this action on September 21, 2010, followed by an Amended Class Complaint on December 17, 2010. In Counts One through Three—the class claims— Plaintiff alleges that Chase (1) breached the TPP Agreement by failing to offer permanent HAMP modifications to homeowners who complied with the payment and documentation requirements of their TPP Agreements; (2) violated Section 1681m of the FCRA by failing to provide written notice of its NPV determinations and HAMP eligibility decisions or statements of related rights under the FCRA to Plaintiff and the putative class members; and (3) violated the ECOA and Virginia Code Section 59.1-21.21:1 by failing to timely notify consumers that their HAMP applications had been denied, failing to provide an adequate statements of reasons for the denial, and failing to provide disclosures required by statute.

Defendants filed the instant Motion to Dismiss Counts One, Two, and Three of the Amended Class Complaint on January 7, 2011. Plaintiff has responded, and Defendants have replied. The matter is ripe for decision.

## II. STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure provides that "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint . . . [I]t does not resolve contests

4

surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

To survive a motion to dismiss, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly* 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). Mere labels and conclusions stating that the plaintiff is entitled to relief are not enough. *Id.* at 555, 127 S. Ct. at, 1964–65. "[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when it contains sufficient factual allegations supporting the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The Court must assume plaintiff's well-pleaded factual allegations to be true and determine whether those allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950. In addition, the Court "may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396–97 (4th Cir. 2006) (per curiam).

## III. ANALYSIS

### A. Count One: Breach of Contract Claim

Plaintiff first alleges that Chase breached her TPP Agreement by failing to offer her a permanent loan modification. In Plaintiff's view, TPP agreements are valid, enforceable contracts which require servicers to offer permanent loan modifications so long as "the homeowner executes the Trial Period Plan Agreement, complies with objective documentation requirements and makes all three Trial Period Contract monthly payments." (Pl.'s Am. Compl. ¶ 38–39.) Plaintiff alleges that because she executed the agreement, timely made all three trial-period payments, and provided the necessary documents, Chase breached the contract by failing to offer her a permanent modification. (*Id.* at ¶ 127.)

Plaintiff is not the first federal-court claimant to assert entitlement to a permanent HAMP modification. These actions have taken a variety of forms based on different legal theories, none of which have fared well in the courts.

First, homeowners in those cases filed suit claiming entitlement to permanent modifications under HAMP itself. Courts universally rejected these claims on the ground that HAMP does not create a private right of action for borrowers against lenders and servicers.[4] *See, e.g., Winn v. Chase Mortgage Servs.*, No. 2:10cv395, slip op. at 7 (E.D. Va. Oct. 29, 2010) ("Plaintiff does not have a private right of action under HAMP"); *Pennington v. PNC Mortgage*, No. 2:10cv361, slip op. at 6 (Aug. 11, 2010) (recognizing

---

[4] In lieu of creating a private right of action, the federal government expressly delegated Freddie Mac as the exclusive HAMP compliance authority. *Marks v. Bank of Am., N.A.*, No. 3:10-cv-08039-PHX-JAT, 2010 U.S. Dist. LEXIS 61489, at *15–16 (D. Ariz. June 21, 2010).

that Congress did not intend to "create a private right of action against participating

servicers" and holding that "Plaintiffs do not have a private right of action to enforce

applicable HAMP regulations"); *Hoffman v. Bank of Am., N.A.*, No. C 10-2171 SI, 2010

U.S. Dist. LEXIS 70455, at *14–15 (N.D. Cal. June 30, 2010) (holding that HAMP does

not provide a private right of action against lenders); *Simon v. Bank of Am., N.A.*, No. 10-

cv-300-GMN-LRL, 2010 U.S. Dist. LEXIS 63480, at *26–27 (D. Nev. June 23, 2010)

(dismissing claim because HAMP "does not provide borrowers with a private cause of

action against lenders for failing to consider their application for loan modification, or

even to modify an eligible loan"); *Marks v. Bank of Am., N.A.*, No. 3:10-cv-08039-PHX-

JAT, 2010 U.S. Dist. LEXIS 61489, at *16 (D. Ariz. June 21, 2010) ("Plaintiff is

precluded from asserting a private cause of action under HAMP, even disguised as a

breach of contract claim . . ."); *Aleem v. Bank of Am., N.A.*, No. EDCV 09-01812-VAP

(RZx), 2010 U.S. Dist. LEXIS 11944, at *9–10 (C.D. Cal. Feb. 9, 2010).

Second, homeowners in those litigations pursued breach of contract claims as

third-party beneficiaries of servicers' SPAs with Fannie Mae. Courts similarly rejected

these challenges, holding that homeowners are merely incidental beneficiaries of SPAs

with no cognizable property interest in loan modifications. *See, e.g., Winn*, No.

2:10cv395, slip op. at 7–8; *Pennington*, No. 2:10cv361, slip op. at 8; *Hoffman*, 2010 U.S.

Dist. LEXIS 70455, at *14; *Villa v. Wells Fargo Bank, N.A.*, No. 10CV81 DMS (WVG),

2010 U.S. Dist. LEXIS 23741, at *5–7 (S.D. Cal. Mar. 15, 2010); *Escobedo v.*

*Countrywide Home Loans, Inc.*, No. 09cv1557 BTM(BLM), 2009 U.S. Dist. LEXIS

117017, at *4–7 (S.D. Cal. Dec. 15, 2009).[5]

Most recently, homeowners like Plaintiff have pursued breach of contract claims

based on their TPP agreements. Plaintiff contends that she has a "straightforward breach

of contract claim," and emphasizes that "[i]t is the [TPP] contract—not HAMP—that

Plaintiff seeks to enforce." (Pl.'s Mem. Opp'n 10.) Thus, Plaintiff argues, the body of

law holding that HAMP does not create a private right of action and borrowers are not

third-party beneficiaries of SPAs is wholly irrelevant to the instant case. (*See id.* at 9.)

Several courts have flatly rejected this contention. In *Vida v. OneWest Bank,*

*F.S.B.*, the homeowner-plaintiff contended that her breach of contract claim was based on

her TPP agreement and common-law contract principles, independent of HAMP. No. 10-

987-AC, 2010 WL 5148473, at *4 (D. Or. Dec. 13, 2010). The court dismissed her

claim, holding that she "fail[ed] to state a cause of action independent of HAMP,"

because "the alleged offer to modify came about and was made wholly under the rubric

of HAMP, as were [her] alleged actions in acceptance of the offer." *See id.* at *4–5. The

court in *Wigod v. Wells Fargo Bank, N.A.*, No. 10 CV 2348, 2011 WL 250501, at *5

(N.D. Ill. Jan. 25, 2011), adopted *Vida*'s analysis and similarly dismissed the plaintiff's

purported breach of contract claim.

---

[5] In a separate but related vein, the plaintiffs in *Williams v. Geithner* alleged that that servicers' failure to notify them of adverse HAMP decisions violated their due process rights. No. 09-1959, 2009 U.S. Dist. LEXIS 104096, at *14 (D. Minn. Nov. 9, 2009). The court rejected this claim on the ground that there is no cognizable property interest in loan modifications. *Id.* at *21–22.

Like the plaintiffs in *Vida* and *Wigod*, Plaintiff here does not allege a breach of contract claim wholly independent of HAMP. To the contrary, Plaintiff's own complaint illustrates that HAMP and its guidelines are indispensable to her breach of contract claim. First, Plaintiff characterizes the TPP Agreement as the first of two essential steps to obtaining a permanent modification under HAMP. (Pl.'s Am. Compl. ¶¶ 37–39.) Second, she claims that "the terms of th[e] permanent modification [promised by the TPP] are . . . objectively determinable . . . based on the . . . analysis required under the HAMP program." (*Id.* at ¶ 39). Third, Plaintiff attached voluminous HAMP program documentation to her complaint, yet conspicuously failed to include the TPP Agreement which purportedly provides the sole basis for her cause of action.[6] Finally, Plaintiff characterizes HAMP as "the program that is at issue in this case" (*id.* at ¶ 29), and lists one of the putative class's common questions as "[t]he nature, scope and operation of Defendant's obligations to homeowners *under HAMP*" (*id.* at ¶ 116 (emphasis added)), as opposed to the nature and scope of Defendants' obligations *under the TPP Agreement*. Plaintiff cannot rely on HAMP to define the scope of her modification rights while at the same time professing that her action persists without "any reference to HAMP." (Pl.'s Mem. Opp'n 13.)

Even if she could, Plaintiff has not stated a plausible claim for breach of contract. Plaintiff alleges that homeowners who execute the TPP Agreement and fulfill its documentation and payment requirements are entitled to permanent modification. (Pl.'s

---

[6] Defendants attached the TPP Agreement to their Memorandum in Support of Motion to Dismiss Counts One, Two and Three of the Amended Class Complaint. (*See* Defs.' Mem. Supp. Ex. 3.)

Am. Compl. ¶ 39.)  The plain language of the TPP Agreement, however, belies her claim.

The TPP Agreement clearly stated that it

> is not a modification of the Loan Documents and that the Loan Documents
> *will not be modified* unless and until (i) I meet *all of the conditions* required
> for modification, (ii) I receive a fully executed copy of a [Home
> Affordable] Modification Agreement, and (iii) the Modification Effective
> date has passed.

(Defs.' Mem. Supp. Ex. 3 ¶ 2(G) (emphasis added).)  It similarly advised that "the Loan

Documents will not be modified"

> [i]f prior to the Modification Effective Date,[7] (i) the Lender does not
> provide me a fully executed copy of this Plan and the Modification
> Agreement; (ii) I have not made the Trial Period payments required under
> Section 2 of this Plan; or (iii) the Lender determines that my representations
> in Section 1 are no longer true and correct . . . .

(*Id.* at ¶ 2(F).)  In Section 1, Plaintiff promised to provide "documentation for all income"

(*id.* at ¶ 1(D)), which the Lender would use "to determine *whether [she] qualif[ied]* for

the offer" of permanent loan modification, and the TPP Agreement made clear that

Plaintiff might "not qualify" for the offer (*id.* at 1).  The TPP Agreement's cover letter

further emphasized the conditional nature of permanent modification, repeatedly stating

that Plaintiff needed to qualify for the modification *and* comply with all terms of the TPP

in order to receive a permanent modification.  (Defs.' Mem. Supp. Ex. 4, at 1("*If you*

*qualify* under the federal government's Home Affordable Modification program *and*

comply with the terms of the Trial Period Plan, we will modify your mortgage loan . . .

.") (emphasis added); *see also id.* at 5.)

---

[7] The "Modification Effective Date" is "the first day of the month following the month in which
the last Trial Period Payment is due." (Defs.' Mem. Supp. Ex. 3 ¶ 2.)

Here, Plaintiff has not alleged that she qualified for permanent modification, nor has she alleged that she received a fully executed copy of the Plan or Modification Agreement prior to the Modification Effective Date.[8] To the contrary, Plaintiff allegedly received a letter in which Chase stated that she did *not* qualify for permanent modification. (Pl.'s Am. Compl. ¶ 95; *see also id.* at ¶¶ 138–39 (characterizing the NPV calculation as a "component of HAMP eligibility," and noting that Chase "denied the HAMP application of Plaintiff . . . based upon an inadequate "Net Present Value" output).)

Although the Court accepts as true Plaintiff's factual allegations that she timely made her TPP payments and provided the requisite documentation, the Court need not disregard the plain language of the TPP Agreement and accept Plaintiff's legal conclusion that all of the TPP Agreement's conditions for permanent modification were satisfied. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (noting that the court "need not accept the legal conclusions drawn from the facts," nor must it "accept as true unwarranted inferences, unreasonable conclusions or arguments"); *see also, e.g., Prasad v. BAC Home Loans Servicing LP*, No. 2:10CV2343-FCD/KJN, 2010 WL 5090331, at *3 (E.D. Cal. Dec. 7, 2010). Thus, like the majority of courts which have decided this issue, this Court finds that Plaintiff has not

---

[8] In addition, although Section 1 of the TPP Agreement required Plaintiff to certify that "[t]here has been no change in the ownership of the Property since I signed the Loan Documents" (Defs.' Mem. Supp. Ex. 3 ¶1 (C)), Plaintiff herself alleges that she and her husband divorced and executed a quitclaim deed transferring ownership of the property solely to Plaintiff (Pl.'s Am. Compl. ¶ 78). Because Plaintiff's Complaint indicates only that the date on which the quitclaim deed was recorded (April 7, 2010) as opposed to the date of transfer, however, the Court does not rest its holding on this fact.

alleged an actual breach of the purported contract. *See, e.g., Lonberg v. Freddie Mac*, No. 10-6033-AA, 2011 U.S. Dist. LEXIS 23137, at *16, *20 (D. Ore. Mar. 3, 2011) (holding that "plaintiff fail[ed] to allege a breach of any contract" where the TPP agreement stated that a binding modification agreement would not result unless the servicer determined that the borrower complied with the TPP agreement and delivered to the borrower a modification agreement signed by borrower and servicer, but plaintiff failed to allege that a loan modification was executed by plaintiff and defendant); *Brown v. Bank of New York Mellon*, No. 1:10CV550, 2011 WL 206124, at *3 (W.D. Mich. Jan. 21, 2011) (holding that Plaintiff failed to state a breach of contract claim, because the TPP "agreement did not guarantee that Plaintiff's loan documents would be modified"); *Prasad v. BAC Home Loans Servicing LP*, No. 2:10-CV-2343-FCD/KJN, 2010 WL 5090331, at *2–4 (E.D. Cal. Dec. 7, 2010) (holding that "no binding contract has been alleged" where "plaintiff allege[d] that he performed the terms and conditions of the contract by providing the requested documents and making three successive payments," but failed to allege that servicer determined plaintiff to be eligible or sent plaintiff an executed loan modification; *Grill v. BAC Home Loans Servicing LP*, No. 10-CV-03057-FCD/GGH, 2011 WL 127891, at *4 (E.D. Cal. Jan. 14, 2011) (same); *Torres v. Litton Loan Servicing LP*, No. 1:10-cv-01709-OWW-SKO, 2011 WL 149833, at *3 (E.D. Cal. Jan. 18, 2011) (same).[9]

---

[9] The Court is not persuaded to the contrary by *Durmic v. J.P. Morgan Chase Bank, N.A.*, No. 10-CV-10380-RGS, 2010 WL 4825632 (D. Mass. Nov. 24, 2010), and *Bosque v. Wells Fargo Bank, N.A.*, No. 10-10311-FDS, 2011 U.S. Dist. LEXIS 8509 (D. Mass. Jan. 26, 2011). These cases from the District of Massachusetts are the only decisions on record holding that breach of

Because this Court finds that Plaintiff does not state a breach of contract claim independent of HAMP and, in any event, Plaintiff has not sufficiently alleged a breach, the Court need not decide whether the TPP Agreement is an unenforceable agreement to agree or whether it is supported by consideration. (*See* Defs.' Mem. Supp. 13–18; Defs.' Reply 8–18.) Defendants' Motion to Dismiss will be granted as to Count One.

## B. Count Two: Section 1681m of the FCRA

In Count Two, Plaintiff alleges that Chase willfully and negligently violated section 1681m of the FCRA by failing to provide her with an "adverse action" notice after determining that she was ineligible for a permanent HAMP modification. (Pl.'s Am. Compl. ¶ 139–40.) Defendants have moved to dismiss on the ground that no private right of action exists under that section of the FCRA. (Defs.' Mem. Supp. 18–20.) The question for this Court is whether 15 U.S.C. § 1681m(h)(8) ("§ 1681m(h)(8)") precludes private enforcement of section 1681m in its entirety, or only of subsection 1681m(h).

Congress added § 1681m(h)(8) to the FCRA in 2003 as part of the Fair and Accurate Credit Transactions Act ("FACTA"), Pub. L. No. 108-159, 117 Stat. 1952, 1993 (2003). It provides:

---

contract claims based on TPP agreements could withstand motions to dismiss pursuant to Rule 12(b)(6). Neither case addressed whether the plaintiff's claim was precluded as an attempt to privately enforce HAMP. *See Durmic*, 2010 WL 4825632, at *2 n.9 (reasoning HAMP's preclusive effect would be better resolved on summary judgment). In any event, *Bosque* and *Durmic* are distinguishable because the servicers in those cases allegedly determined that the plaintiffs were eligible for HAMP based on their NPV analyses. *Bosque*, 2011 U.S. Dist. LEXIS 8509, at *11; *Durmic*, 2010 WL 4825632, at *2. Furthermore, whereas Plaintiff here claims entitlement to an offer of permanent modification, the plaintiffs in *Bosque* asserted that the TPP Agreement entitled them to a *decision* as to whether they would receive a permanent modification by the Modification effective date. *See Bosque*, 2011 U.S. Dist. LEXIS 8509, at *13–14.

(8) Enforcement

(A) No civil actions

*Sections* 1681n and 1681o of this title shall not apply to any failure by any person to comply with this *section.*

(B) Administrative enforcement

This *section* shall be enforced exclusively under *section* 1681s of this title by the Federal agencies and officials identified in that *section.*

15 U.S.C. § 1681m(h)(8) (emphasis added). Sections 1681n and 1681o authorize private civil actions for willful and negligent violations of the FCRA. *See* 15 U.S.C. §§ 1681n, 1681o. Section 1681s, on the other hand, provides that compliance with 15 U.S.C. §§ 1681 *et seq.* shall be enforced by the Federal Trade Commission and other agencies. 15 U.S.C. § 1681s.

Virtually every federal district court and the only federal court of appeals to interpret § 1681m(h)(8) has found it to be clear and unambiguous: the word "section" means "section," and thus no private right of action exists for violations of section 1681m in its entirety. *See, e.g., Perry v. First Nat'l Bank,* 459 F.3d 816, 822–23 (7th Cir. 2006); *Floyd-Keith v. Homecomings Fin., LLC,* No. 2:09cv769-WKW, 2010 WL 3927596, at *8 (M.D. Ala. Sept. 17, 2010); *Banga v. Allstate Ins. Co.,* No. CIV S-08-1518 LKK EFB PS, 2010 WL 1267841, at *3 (E.D. Cal. Mar. 31, 2010); *DiMedio v. HSBC Bank,* Civil No. 08-5521 (JBS/KMW), 2009 U.S. Dist. LEXIS 52238, at *6–7 (D.N.J. June 22, 2009); *Tobler v. Equifax,* No. 08-cv-12610, 2009 WL 1491046, at *3 (E.D. Mich. May 27, 2009); *Soroka v. JP Morgan Chase & Co.,* 500 F. Supp. 2d 217, 223–24 (S.D.N.Y. 2007); *Gelman v. State Farm Mut. Auto. Ins. Co.,* No. 06-5118, 2007 U.S. Dist. LEXIS

14

58237, at *12 n.8, 26–30 (E.D. Pa. Aug. 9, 2007), *aff'd* 583 F.3d 187 (3d Cir. 2009);

*Hoffer v. Landmark Chevrolet Ltd.*, 245 F.R.D. 588, 600 (S.D. Tex. 2007); *Farrow v.*

*Capital One Auto Fin., Inc.*, Civil No. CCB-06-2324, 2007 U.S. Dist. LEXIS 95750, at

*6 n.2 (D. Md. Nov. 9, 2007); *Villagran v. Freeway Ford, Ltd.*, No. H-05-2687, 2006

U.S. Dist. LEXIS 25563, at *1 (S.D. Tex. Jan. 18, 2006); *White v. E-Loan, Inc.*, 409 F.

Supp. 2d 1183, 1187 (N.D. Cal. 2006); *Bruce v. Grieger's Motor Sales, Inc.*, 422 F.

Supp. 2d 988, 990–93 (N.D. Ind. 2006); *Putkowski v. Irwin Home Equity Corp.*, 423 F.

Supp. 2d 1053, 1060–62 (N.D. Cal. 2006); *Murray v. Cross Country Bank*, 399 F. Supp.

2d 843, 845 (N.D. Ill. 2005); *Harris v. Fletcher Chrysler Prods., Inc.*, 458 F. Supp. 2d

748, 750–52 (S.D. Ind. 2006); *see also Calloway v. Green Tree Servicing, LLC*, 607 F.

Supp. 2d 669, 674 (D. Del. 2009) (noting that there is no private right of action under §

1681m).

Plaintiff nevertheless asks this Court to adopt the contrary analysis set forth in

*Barnette v. Brook Road, Inc.*, 429 F. Supp. 2d 741 (E.D. Va. 2006). In *Barnette*, the

court acknowledged the "plain language" reading of § 1681m(h)(8), but went on to

examine the "statutory context and related provisions" of the FCRA. *Id.* at 746–47.

Specifically, the court looked to § 312(f) of FACTA—a portion of the Statutes at Large

which was ultimately placed in the Historical and Statutory Notes following 15 U.S.C. §

1681n—which provides that "[n]othing in this section, the amendments made by this

section, or any other provision of this Act shall be construed to affect any liability under

section 616 or 617 of the Fair Credit Reporting Act (15 U.S.C. 1681n, 1681o). . . ." *Id.*

(quoting Fair and Accurate Credit Transactions Act of 2003, Pub. L. No. 108-159, §

312(f), 117 Stat. 1952, 1993 (codified as amended at 15 U.S.C. § 1681n, Historical and

Statutory Notes (2003))). The court concluded that "§ 312(f) dictates that private

individuals may still enforce the requirements of § 1681m that antedated FACTA," and

that any resulting conflict with § 1681m(h)(8) could be avoided so long as the word

"section" in § 1681m(h)(8) was read to mean "subsection." *Id.* at 747–48. Thus, the

court held that "the use of 'section' instead of 'subsection' in § 1681m(h)(8) was a

drafting error" which should be corrected by the courts. *Id.* at 747, 749–50.

Very few courts have adopted *Barnette*. Indeed, only one court outside this

division has endorsed *Barnette*'s analysis over the plain-meaning reading of §

1681m(h)(8). *See Kubbany v. Trans Union, LLC*, No. C 08-00320 CW, 2009 U.S. Dist.

LEXIS 88729, *3–4 (N.D. Cal. June 10, 2009). Of the two decisions in this district

which apparently followed *Barnette*, one relegated its discussion of section 1681m to a

footnote and cited *Barnette* with no mention of conflicting authority. *See Jefferson v.

Briner Inc.*, No. 3:05-CV-652, 2006 WL 1720692, at *7 n.8 (E.D. Va. June 21, 2006).

The other made no mention of section 1681m or *Barnette* in any written order or opinion.

*See Johnson v. Kia*, No. 3:06CV600 (E.D. Va. Jan. 26, 2007).[10]

Courts have instead continued to give the word "section" its plain meaning,

finding that there is no actual conflict between this plain-meaning reading of §

1681m(h)(8) and § 312(f) of FACTA. *See Perry v. First Nat'l Bank*, 459 F.3d 816, 822–

23 (7th Cir. 2006). As the Seventh Circuit explained in *Perry*:

---

[10] In *Johnson*, the plaintiff apparently brought a claim under § 1681m. The defendant moved to transfer venue or, in the alternative, to dismiss. Ruling from the bench, the court denied the defendant's motion to dismiss and granted the motion to transfer the case to Alexandria.

> While section 312(f) of FACTA provides that the amendments shall not
> "affect any liability" under 15 U.S.C. §§ 1681n and 1681o, it says nothing
> about who has the right to bring suit to hold responsible parties liable under
> §§ 1681n and 1681o.  Our reading of § 1681m(h)(8) has no effect on [the
> defendant's] potential liability for violations of § 1681m.  [The defendant]
> can still be held liable for any violation, but only by the federal agencies
> and officials identified in 15 U.S.C. § 1681s.

*Id.* at 823.  This Court agrees with the Seventh Circuit that § 312(f) of FACTA does not

actually conflict with the plain-meaning reading of § 1681m(h)(8).

In sum, the Supreme Court "ha[s] stated time and again . . . courts must presume

that a legislature says in a statute what it means and means in a statute what it says there.

When the words of a statute are unambiguous, then, this first canon is also the last:

'judicial inquiry is complete.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461–62, 122

S. Ct. 941, 956 (2002); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S.

546, 125 S. Ct. 2611, 2626 (2005) ("[T]he authoritative statement is the statutory text, not

the legislative history or any other extrinsic material. Extrinsic materials have a role in

statutory interpretation only to the extent they shed a reliable light on the enacting

Legislature's understanding of otherwise ambiguous terms.").

This Court agrees with the overwhelming weight of authority holding that the

phrase "this section" in § 1681m(h)(8) refers to section 1681m in its entirety, and thus no

private right of action to enforce section 1681m exists.  Defendants' motion to dismiss

Count Two will therefore be granted.

## C.  Count Three: ECOA and VECOA

Finally, Defendants ask this Court to dismiss Plaintiff's claim under the ECOA

and the VECOA.  Plaintiff alleges that Chase violated these statutes by failing to notify

17

consumers that they were denied permanent loan modifications; failing to provide an adequate statement of reasons for its adverse action; and failing to provide the statutorily-required disclosures. Chase contends that it did not take "adverse action" against Plaintiff, and thus no notice was required.

The ECOA requires a creditor that takes "adverse action" on a consumer credit application to provide a "statement of reasons" for the adverse action. 15 U.S.C. § 1691(d). "Adverse action" is defined as:

> [A] denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default . . . .

15 U.S.C. § 1691(d)(6).[11]

Chase emphasizes the latter part of this definition, arguing that because Plaintiff was delinquent on her mortgage payments, Chase's denial of her HAMP modification was not "adverse action" for which notice was required. (Defs.' Mem. Supp. 21.) In the alternative, Chase asserts that Plaintiff's claim must be dismissed because she has not alleged how the denial letter she received was deficient, nor has she alleged "any facts supporting the bald legal conclusion that any such violation caused her any pecuniary loss." (*Id.* at 22.)

The Court does not agree that "[P]laintiff's allegations make plain that she was delinquent" on her mortgage. (*Id.* at 21.) Although Plaintiff has alleged that a Chase

---

[11] The VECOA tracks the ECOA, specifically excluding from the definition of "adverse action" any action taken where the applicant is delinquent or in default. *See* Va. Code Ann. § 6.2-500 (2010).

employee incorrectly advised her to skip her May 2009 mortgage payment, Plaintiff does

not allege that she took that advice. (*See* Pl.'s Am. Compl. ¶ 54.) To the contrary,

Plaintiff asserts that she was never late on any requested payments. (*See id.* at ¶¶ 55, 68.)

Further, although Plaintiff does not specifically allege having paid her mortgage in

January 2010 (*see id.* at ¶ 62 (noting that Plaintiff timely made payments in August,

September, October, November, and December 2009, and from February 2010 through

the present)), the Court cannot at this stage conclude that she was delinquent or in default

such that no adverse action notice was required under the ECOA or VECOA. Indeed,

assuming without deciding that Plaintiff's delinquency is to be determined at the time

Chase found her to be ineligible for a permanent modification, *see Davis v. CitiMortgage,*

*Inc.*, No. 10-12136, 2011 U.S. Dist. LEXIS 25179, at * 7 (E.D. Mich. Mar. 11, 2011)

("The default status of a consumer is determined at the time the creditor takes action with

respect to the consumer . . . ."), a missed payment in January 2010 may very well post-

date the alleged adverse action.

Turning to Defendants' alternative grounds for dismissal, Plaintiff has alleged that

Chase's notice was untimely and failed to provide an adequate statement of reasons for

her denial. (Pl.'s Am. Compl. ¶¶ 153–43.) She has also alleged, in general terms, the

content of the notice she ultimately received. (*See id.* at ¶ 95 (noting that Chase's letter

stated she was ineligible for HAMP based on Chase's NPV calculations).) Further,

although Plaintiff has not specifically alleged how these alleged deficiencies "caused her

any pecuniary loss" (Defs.' Mem. Supp. 22), Plaintiff here seeks declaratory and

injunctive relief under 15 U.S.C. § 1691e(c), not actual damages under § 1691e(a).

Accordingly, taking Plaintiff's facts alleged as true and drawing all reasonable inferences in Plaintiff's favor, this Court finds that Plaintiff's allegations are sufficient to withstand the present Motion to Dismiss Count Three.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss will be GRANTED with respect to Counts One and Two, and DENIED with respect to Count Three.

An appropriate Order will accompany this Memorandum Opinion.

_____/s/_____

Henry E. Hudson
United States District Judge

Date: Apr,'l 1, 2011
Richmond, VA