UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**MICHELLE BOURDELAIS,**

                     **Plaintiff,**

   v.

**JPMORGAN CHASE BANK, N.A.**               Civil Action No. 03:10-cv-670 (HEH)
**and CHASE HOME FINANCE, LLC,**

                     **Defendants.**

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS COUNTS ONE, FIVE, AND SIX

Defendant JPMorgan Chase Bank, N.A. ("Chase"),[1] by counsel, pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss Counts One, Five, and Six in plaintiff's Fourth Amended Complaint, for the reasons set forth below.

### INTRODUCTION

This case has returned to this Court from the MDL because, in her latest complaint, plaintiff abandoned all of her class allegations.[2] Plaintiff used the opportunity of amending her

---

[1] Plaintiff named Chase Home Finance, LLC as a defendant in this action. On May 1, 2011, however, Chase Home Finance, LLC merged into JPMorgan Chase Bank, N.A., and as a result, Chase Home Finance, LLC ceased to exist as a legal entity.

[2] On April 4, 2012, plaintiff filed a Third Amended Complaint, which removed class allegations. (D.E. 39.) Before Chase could respond, on June 5, 2012, plaintiff filed, as a new case, an identical matter, involving the same plaintiff, counsel, and defendants. (*See Bourdelais v. Chase Home Fin., LLC, et al.*, Case No. 3:12-cv-00413, D.E. 1.) On August 20, 2012, this Court granted plaintiff's Motion for Leave to Amend the Complaint in the original *Bourdelais* action. (D.E. 46.) On August 21, 2012, this Court granted plaintiff's unopposed motion to

(Footnote continues on next page.)

complaint to add a new claim for an alleged breach of the implied covenant of good faith and fair dealing, despite the fact that this Court previously found that the initial contract theory asserted in her prior complaint failed for want of a contract. Under well-established Virginia law, and as recognized by the Fourth Circuit, an alleged breach of the implied covenant of good faith and fair dealing cannot give rise to an independent claim where no contract exists. Likewise, courts have rejected the very same argument made by plaintiff here that the implied covenant of good faith and fair dealing (under some general fairness contention) somehow can override or modify any explicit contractual term or right that Chase had the express right to enforce. Plaintiff's new claim for breach of the implied covenant of good faith and fair dealing should therefore be dismissed with prejudice. Additionally, because plaintiff's defamation claim is preempted by the FCRA, and because her RESPA claim fails to allege supporting facts, they too should be dismissed.[3]

**MOTION TO DISMISS STANDARD**

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v.*

---

(Footnote continued from previous page.)

consolidate the two matters. (D.E. 48.) Chase's present Motion to Dismiss is directed at the Fourth Amended Complaint ("Complaint"), the operative complaint in the consolidated matters, and deemed filed by the Court on August 21, 2012. (D.E. 46, 47.)

[3] It is not clear whether plaintiff intends to allege a violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d). Paragraph 1 of the Complaint asserts that the action is also brought pursuant to ECOA, but the Complaint does not contain any separate count or make specific allegations regarding ECOA. To the extent plaintiff intends to make a claim under ECOA, the absence of any factual allegations or legal basis for the claim in the Complaint, should result in its dismissal.

2

*Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

A claim must "provide the grounds of [the] entitle[ment] to relief," and it "requires more than labels and conclusions. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . [.]" *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court need not accept "[l]egal conclusions drawn from the facts," nor "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks omitted). Only once "the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" is "[f]acial plausibility established." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (internal quotation marks omitted); *see also Burnley v. Norwood*, No. 3:10CV264-HEH, 2010 U.S. Dist. LEXIS 78666, at *13 (E.D. Va. Aug. 4, 2010) (Hudson, J.). Ultimately, in evaluating whether a plaintiff has stated a claim, the Court should draw upon both "its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

For each of the claims at issue in this motion, plaintiff has failed to meet the standard of Federal Rules of Civil Procedure 8 and 12(b)(6) as articulated by the Supreme Court. These claims should be dismissed with prejudice, particularly in light of the fact that plaintiff has already amended her complaint on three separate occasions.

**ARGUMENT**

I.  **PLAINTIFF'S CLAIM FOR BREACH OF AN IMPLIED COVENANT IS UNCONNECTED TO ANY CONTRACT, AND SO IS INVALID AS A MATTER OF LAW (COUNT ONE)**

Plaintiff alleges she applied for a loan modification from Chase under the federal government's Home Affordable Modification Program ("HAMP"), and that Chase offered her a Trial Period Plan ("TPP") under that program. Plaintiff was not eligible under HAMP guidelines, and Chase denied her request for a permanent loan modification.[4] Plaintiff initially filed this suit alleging she was entitled to a permanent modification primarily on the theory that the TPP was a contract. On Chase's motion to dismiss the First Amended Complaint, this Court determined that "the plain language of the TPP Agreement, however, belies her claim," and concluded that neither the TPP nor HAMP guidelines entitled plaintiff to a mortgage modification. (*See* D.E. 26 at 9-11 (Apr. 1, 2011).)

Using the same set of facts alleged in the First Amended Complaint, plaintiff now tries to recast her cause of action for breach of the TPP into a claim for "breach of contract for the breach of the implied covenant of good faith and fair dealing." (*Compare* First Amended Complaint ¶¶ 24-111, D.E. 13, *with* Fourth Amended Complaint ¶¶ 130-137, D.E. 45-1.) This recasting does not cure the fatal problems with Count One for two fundamental reasons.

First, to the extent that plaintiff is contending that she has a claim for breach of an implied covenant of good faith and fair dealing associated with the TPP or under HAMP, this Court already has ruled that she has no contractual rights related to the TPP or under HAMP. In paragraph 132 of the Complaint, plaintiff alleges (in conclusory) language ten instances where

---

[4] Chase provided a detailed description of HAMP in its motion to dismiss the First Amended Complaint. (*See* D.E. 15 at 3-11.)

4

Chase supposedly "failed to perform its duty of good faith and fair dealing with respect to Ms. Bourdelais". (*See* Compl. ¶ 132.) Nine of these alleged instances involve supposed conduct by Chase that is directly related to the TPP or HAMP:

(1) falsely informing her that she had to be in default on her mortgage in order to be considered for a *loan modification under HAMP*;

(2) falsely informing her that since she was current on her mortgage, she would have to miss a payment in order to *qualify under HAMP*;

(3) inducing her into a *HAMP loan modification and Trial Payment Plan* without disclosing that it would consider the reduced monthly payment to be a delinquency or default that would place the loan into arrears and would trigger foreclosure;

(4) instead of applying the payments made *under the TPP* to reduce the principal and pay the interest and escrow on her mortgage, Chase put the payments into an escrow account;

(5) despite telling the Plaintiff her [HAMP loan modification] application was complete, Chase sent her a denial notice stating that she had not timely provided required documents and thus her application [for a HAMP modification] was being denied as incomplete;

\* \* \*

(7) failing to follow *HAMP guidelines*;

(8) failing to properly safeguard and maintain important documents provided by Ms. Bourdelais [during her HAMP modification request process];

(9) continuing to perform additional NPV, credit and income verifications during the *TPP*; and

(10) despite requests from Ms. Bourdelais, Chase refused to provide her with NPV calculations; after inducing Ms. Bourdelais into a *TPP*, and despite her compliance with all of Chase's conditions [in the HAMP loan modification process], Chase repeatedly sent acceleration notices to Ms. Bourdelais and reported her to the consumer reporting agencies as defaulted on her mortgage.

(*Id.* (emphasis added).)

While Virginia does recognize an implied covenant of good faith and fair dealing in certain contracts, Virginia does not recognize breach of an implied covenant as an independent

5

claim (i.e., a separate tort or cause of action where no contract exists). *See Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 251 Va. 28, 33, 466 S.E.2d 382 (1996) (analyzing duty of good faith under Uniform Commercial Code and holding "that the failure to act in good faith . . . does not amount to an independent tort").

Indeed, the Fourth Circuit has acknowledged that Virginia does not recognize an independent claim for breach of the implied covenant of good faith and fair dealing, and has repeatedly affirmed dismissal of such claims. *See Derthick Assocs. v. Bassett-Walker, Inc.*, No. 95-2230, 1997 U.S. App. LEXIS 2302, at *8 (4th Cir. Feb. 12, 1997) (affirming district court's dismissal of claim for breach of implied covenant of good faith and fair dealing and holding "Virginia does not recognize an independent claim for breach of such a covenant"); *see also L&E Corp. v. Days Inns of Am., Inc.*, 992 F.2d 55, 59 n.2 (4th Cir. 1993) (noting that Virginia does not recognize independent claim for breach of implied covenant of good faith and fair dealing).

Courts in this District have routinely dismissed claims for breach of the implied covenant of good faith and fair dealing under Virginia law. For example, in *Frank Brunckhorst Co. v. Coastal Atlantic, Inc.*, 542 F. Supp. 2d 452 (E.D. Va. 2008), the court held that "[b]ecause [plaintiff's] claim for breach of contract is legally insufficient to withstand dismissal under Fed. R. Civ. P. 12(b)(6), [plaintiff] cannot make a valid claim for the breach of an implied covenant contained in the contract." 542 F. Supp. 2d at 465 (citing *Charles E. Brauer Co*, 251 Va. 28). Similarly, in *Johnson v. D&D Home Loans Corp.*, the court determined that because the plaintiff could not raise a breach of contract claim against the defendant, "a claim for a breach of the implied covenant of good faith and fair dealing would also not be possible." No. 2:07cv204,

6

2007 U.S. Dist. LEXIS 90140, at *9 (E.D. Va. Dec. 6, 2007) (citing *Charles E. Brauer Co.*, 251 Va. 28).

Plaintiff's creative effort to revive her contract-based claim by asserting nine TPP/HAMP allegations gets her nowhere. In light of the fact that this Court has already found that there is no contract entitling plaintiff to a mortgage modification, plaintiff cannot have an implied covenant-based claim related to the TPP, mortgage modification or under HAMP. Said differently, if plaintiff has no TPP, mortgage modification or HAMP-related contract, she cannot have a claim that Chase breached the implied covenant of good faith and fair dealing with respect to such a contract.

Second, perhaps aware that Virginia law does not recognize an independent claim for breach of the implied covenant of good faith and fair dealing, plaintiff conclusorily adds that Chase "fail[ed] to abide by terms of the Note and Deed of Trust that govern the original loan" and "breached the Note and Deed of Trust." (*See* Compl. ¶¶ 132(6) and 133.) These vague and scant allusions in the Complaint to a breach of the loan documents are precisely the type of fact-barren assertions that *Twombly* and *Iqbal* teach do not suffice to put defendant to the cost of defending beyond the pleading stage.[5] Plaintiff nowhere alleges that Chase breached any particular term of the Note or Deed of Trust. Nor does plaintiff even attempt to explain where in the Note or Deed of Trust a contractual right to a mortgage modification exists—nor could she, because those documents provide to the contrary that she will be bound by the original terms of

---

[5] Indeed, under *Iqbal*, allegations like those made by plaintiff here that "are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679; *see also Stidham v. Jackson*, No. 2:07-cv-00028, 2007 U.S. Dist. LEXIS 54032, at *13 (W.D. Va. July 26, 2007) (holding that legal conclusions "couched as factual allegations need not be accepted as true").

20096369v1

her loan. (*See* Exhibit 1, Note and Deed of Trust.[6]) Courts have refused to allow plaintiffs to use the implied covenant of good faith and fair dealing as some general fairness term to rewrite or to modify those types of agreements by creating obligations that simply are not present in the documents themselves. *See, e.g., Clemons v. Home Savers, LLC*, 530 F. Supp. 2d 803, 812 (E.D. Va. 2008) (explaining, in context of a home purchase contract, that "[u]nder Virginia law, the duty of good faith and fair dealing implicit in every contract cannot be used to override or modify *explicit* contractual terms . . . [or] 'create duties that do not otherwise exist'") (citing *Ward's Equip. v. New Holland N. Am.*, 254 Va. 379, 385, 493 S.E.2d 516, 520 (1997)) (emphasis added).[7]

---

[6] Plaintiff relies on the Note and Deed of Trust to make her implied covenant claim. (*See* Compl. ¶¶ 131-137.) As such, the Court may properly consider both on this motion to dismiss. *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) ("Specifically, a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed."); *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) ("'[A] court may consider [a document outside of the complaint] in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'") (citation omitted); *Brady v. Astrue*, No. 2:09cv242, 2010 U.S. Dist. LEXIS 77677, at *4 (E.D. Va. Aug. 2, 2010) ("'[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.'") (citation omitted). This policy prevents plaintiffs with "'a legally deficient claim [to] survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied'" and "properly balances the plaintiffs' right to notice of those matters which may be addressed by the Court, and the defendants' right to test swiftly the legal soundness of the charges made against them." *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (citation omitted).

[7] On the contrary, the Note and Deed of Trust both contain an agreement by plaintiff to make her mortgage payment each month on time and in full, terms which the Complaint suggests were not met by plaintiff. (*See* Compl. ¶¶ 54 (alleges that she was told to skip May 2009 payment, and fails to allege payment in May 2009), 57 (admits she paid less than full amount in June and July 2009), 62 (fails to allege payment in January 2010).) Indeed, the Note provides that plaintiff "promise[s] to pay" the principal (Note at ¶ 1), "will pay principal and interest by making a payment very month" for a specified amount (*id* at ¶ 3(A)-(B)), and failure to pay the full amount will place plaintiff in default (*id*. at ¶ 6(B)). Plaintiff agreed to similar terms in the Deed, which also provides that, should plaintiff breach any term of the Deed, the lender is

(Footnote continues on next page.)

8

Chase expects plaintiff to rely heavily on a decision issued last year by Judge Spencer in *Acuna v. Chase Home Finance, LLC*, No. 3:10-cv-905, 2011 U.S. Dist. LEXIS 52971 (E.D. Va. May 17, 2011). Decided under materially different facts,[8] *Acuna* does not stand for the proposition that a claim for breach of the implied covenant of good faith and fair dealing could exist independent of a viable contract claim under Virginia law. Similarly, *Acuna* cannot change hornbook Virginia law that "the duty of good faith and fair dealing implicit in every contract cannot be used to override or modify *explicit* contractual terms . . . [or] 'create duties that do not otherwise exist.'" *Clemons v. Home Savers, LLC*, 530 F. Supp. 2d at 812 (citing *Ward's Equip.*, 254 Va. at 385, 493 S.E.2d at 520) (emphasis added).[9]

Because plaintiff fails to identify any performance of, or failure to perform, any specific term of the Note or Deed of Trust,[10] she has failed to implicate the implied covenant of good

---

(Footnote continued from previous page.)

entitled to acceleration of the amounts owing and sale of the property (*id.* at ¶ 22). (*See also*, Deed at ¶ 12) (providing that any forbearance by the lender shall not operate as a waiver to release the borrower from liability).)

[8] In *Acuna*, the plaintiff lost his house in a foreclosure auction. Here, plaintiff's house was never sold at a foreclosure auction, and she continues to retain possession of it. This factual distinction is crucial because notes and deeds of trust, by their very nature and purpose, govern the possession of property. Therefore, the actual loss of such possession would more likely impinge upon the very nature and purpose of a note and deed of trust. By contrast, there is nothing in a note and deed of trust that entitles a borrower to a mortgage modification.

[9] Indeed, there is no analysis of any express contract terms, or how an implied covenant related to those terms, in the court's decision in *Acuna*. Nor does it appear from the briefs in that case that the court was made aware of the substantial body of case law holding that Virginia does not recognize an independent claim for breach of the implied covenant of good faith and fair dealing. (*See* D.E. 4, 6, and 7 in *Acuna*, Case No. 10-cv-905 (E.D. Va.).) The court in *Acuna* does not address in its analysis any of that authority, including the Fourth Circuit cases squarely rejecting such claims. *See Derthick Assocs.*, 1997 U.S. App. LEXIS 2302, at *8; *L&E Corp.*, 992 F.2d at 59 n.2.

[10] This is aside from the failure of the Complaint to satisy *Twombly* and *Iqbal* as it does not set forth sufficient factual allegations to "nudge" Count One across the line from conceivable

(Footnote continues on next page.)

faith and fair dealing in any way. As a result, plaintiff does not even begin to state a claim by reference to those documents here.

For all the foregoing reasons, Count One cannot state a cause of action upon which relief can be granted, and the Court should dismiss it with prejudice.

## II. PLAINTIFF'S DEFAMATION CLAIM IS PREEMPTED BY THE FCRA (COUNT FIVE)

The Fair Credit Reporting Act preempts plaintiff's defamation claim. Specifically, the FCRA prohibits the imposition of any requirement or prohibition under state law on a person for the reporting of allegedly inaccurate information to consumer reporting agencies. 15 U.S.C. § 1681t(b)(1)(F). Because plaintiff's defamation claim is based on Chase's alleged reporting of inaccurate information about her to consumer reporting agencies, her claim is preempted by the FCRA.

While the FCRA provides consumers with a federal cause of action against furnishers, the Act also preempts certain state-law claims. Specifically, 15 U.S.C. § 1681t(b)(1)(F) provides in relevant part as follows:

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . [.]

15 U.S.C. § 1681t(b)(1)(F). Section 1681s-2, which is specifically mentioned in the above preemption provision of the FCRA, comprehensively regulates the furnishing of information to Consumer Reporting Agencies ("CRAs") and specifically governs furnishers' "[r]eporting [of]

---

(Footnote continued from previous page.)

to plausible. *See Twombly*, 550 U.S. at 544; *see also Hailey v. Bank of Am., N.A.*, 2011 U.S. Dist. LEXIS 72410 (E.D. Va. July 1, 2011) (Hudson, J.) (dismissing plaintiff's TILA claim on a Rule 12(b)(6) motion because the complaint does not specify what kind of violations occurred).

information with actual knowledge of errors," providing that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A).

Consequently, courts have held that 15 U.S.C. § 1681t(b)(1)(F) preempts consumers from using defamation claims to impose liability on furnishers for reporting erroneous information to CRAs. *See, e.g., Marshall v. Swift River Acad., LLC*, 327 F. App'x 13, 15 (9th Cir. 2009) (holding defamation claims "based exclusively on information . . . furnished to the CRA, are preempted by the FCRA") (citing 15 U.S.C. § 1681t(b)(1)(F)); *Wedgeworth v. Result Matrix, Inc.*, No. 10-cv-0184, 2010 U.S. Dist. LEXIS 71140, at *13 (M.D. Ala. July 15, 2010) (holding "Section 1681t(b)(1)(F) preempts state law claims that implicate the duties of [defendant] as a furnisher of information to consumer reporting agencies."); *Johnson v. JPMorgan Chase Bank*, 536 F. Supp. 2d 1207, 1214-15 (E.D. Cal. 2008) (same); *Knudson v. Wachovia Bank, N.A.*, 513 F. Supp. 2d 1255, 1260 (M.D. Ala. 2007) (same).

Here, plaintiff contends that Chase should be liable to her for defamation based on Chase's allegedly reporting inaccurate information to CRAs. (*See* Compl. ¶¶ 154-157.) Plaintiff alleges that Chase made "multiple false statements" to credit reporting agencies "on multiple occasions," and, specifically, during an April 3, 2012 conference call where, pursuant to plaintiff's request, a Chase representative advised plaintiff and Kroll Factual Data of the amount that plaintiff owed in payments past due. (Compl. ¶ 154.) This very issue has been conclusively decided by the Fourth Circuit. In *Ross v. FDIC, as receiver of Washington Mutual Bank*, the plaintiff attempted to assert a claim for violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDPTA") as a result of Washington Mutual's alleged misreporting to

11

credit reporting agencies. 625 F.3d 808, 811 (4th Cir. 2010), *cert denied*, 131 S. Ct. 2991 (2011). The Court held as follows:

> [The plaintiff's] NCUDTPA claim . . . runs into the teeth of the FCRA preemption provision. Her claim concerns WaMu's reporting of inaccurate credit information to CRAs, an area regulated in great detail under § 1681s-2(a)-(b). Because [the plaintiff's] NCUDTPA claim seeks to use [the state law] as a "requirement or prohibition" under North Carolina law concerning "subject matter regulated under section 1681s-2," it is squarely preempted by the plain language of the FCRA. 15 U.S.C. § 1681t(b)(1)(F).

*Id*. at 813. Plaintiff's claim is based on Virginia state law and seeks to impose liability for something expressly covered and comprehensively regulated by the FCRA—*i.e.*, the furnisher's duty to provide accurate information to CRAs— therefore the claim is preempted under the plain language of § 1681t(b)(1)(F) and Fourth Circuit law, and must be dismissed. *See also Blick v. JP Morgan Chase Bank, N.A.,* No. 3:12-cv-00001, 2012 U.S. Dist. LEXIS 41265, at *22-23 (W.D. Va. Mar. 27, 2012) ("[T]o the extent plaintiff's claims regarding derogatory reporting are construed to be [sic] assert state law claims, then those claims are expressly preempted by 15 U.S.C. § 1681t(b)(1)(F).").

Plaintiff cannot change this result with her single—and inconsistent—allegation that Chase did not operate in its "capacity as a credit reporting furnisher" on the April 3, 2012 communication with Kroll. (Compl. ¶ 123.) This lone statement is a legal conclusion, not a factual allegation, and plaintiff fails to allege any facts to support it. Further still, it baldly contradicts the rest of plaintiff's complaint, where she expressly alleges that: (1) "*at all times relevant hereto*," Chase "was a 'furnisher' as governed by the FCRA" (*id*. ¶ 15 (emphasis added)); (2) Chase should be liable under the FCRA as a furnisher (*see* Counts Two, Three, and Four); and (3) Kroll is itself a "credit reporting agency" (*id*. ¶ 154 (as an example of false

20096369v1

statements to a CRA, plaintiff raises the communication with Kroll)). Even if taken as a factual allegation—which the claim that Chase did not operate as a furnisher during one conversation is not—a court need not accept inconsistent factual allegations as true. *See Cook v. Howard*, No. 11-1601, 2012 U.S. App. LEXIS 18053, at *3 (4th Cir. Aug. 24, 2012) (affirming dismissal of complaint containing factual allegations when "[a]t times the allegations directly contradict each other"); *see also Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 31-32 (9th Cir. 2007) (affirming dismissal of complaint containing inconsistent factual allegations for failure to state a claim upon which relief could be granted). Plaintiff has filed four complaints before the present Fourth Amended Complaint, none of which suggested that there was a time where Chase did not operate as a furnisher of credit information with regard to plaintiff. (*See* Original Complaint (D.E. 1) ¶ 14; First Amended Complaint (D.E. 13) ¶ 15; Second Amended Complaint (D.E. 32-1) ¶ 15; Third Amended Complaint (D.E. 39) ¶ 15.)[11] Plaintiff cannot have it both ways—*either* Chase is a furnisher under the FCRA, in which case it is governed by the FCRA and state law claims are preempted, *or* Chase is *not* a furnisher under the FCRA and, thus, it may not be held liable under the FCRA. Plaintiff's allegations repeatedly contradict themselves, both in the

---

[11] While each of plaintiff's previous complaints contained a cause of action for defamation, only in the latest iteration did plaintiff attempt to subvert preemption grounds with the contradictory assertion that Chase did not always operate as a furnisher. To the extent this legal conclusion is considered a factual allegation, "[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985); *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (same). Parties are not permitted to plead facts in an inconsistent manner in order to cure defects in their original legal theories. *See Bradley v. Chiron Corp.*, 136 F.3d 1317, 1324-25 (Fed. Cir. 1998); *Cline v. Indus. Maintenance Eng'g & Contracting Co.*, 200 F.3d 1223, 1232 (9th Cir. 2000) (plaintiffs "could not contradict their earlier allegations in an effort to survive" a dispositive motion). A district court is authorized to strike such inconsistent pleading as "false." *Bradley*, 136 F.3d at 1324. The unequivocal allegations that Chase was a furnisher at all relevant times in plaintiff's first four complaints further doom her attempt to plead around preemption now.

present complaint and in the first four iterations. This Court need not accept them as true and should accordingly dismiss plaintiff's defamation claim on preemption grounds.

### III. PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF RESPA (COUNT SIX)

Plaintiff asserts that Chase violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), by failing to respond to Qualified Written Requests ("QWR"). A QWR is a specific request for information from a loan servicer that places the servicer under certain enumerated obligations once it is received. 12 U.S.C. § 2605. Not every written request is a QWR. A QWR is distinguished from common correspondence between a borrower and a loan servicer because a QWR needs to meet specific statutory and regulatory requirements. In particular, RESPA defines a QWR as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). In addition, RESPA's implementing regulation (Regulation X) similarly defines a QWR as:

> a written correspondence (other than notice on a payment coupon or other payment medium supplied by the servicer) that includes, or otherwise enables the servicer to identify, the name and account of the borrower, and includes a statement of the reasons that the borrower believes the account is in error, if applicable, or that provides sufficient detail to the servicer regarding information relating to the servicing of the loan sought by the borrower.

12 C.F.R. § 1024.21(e)(2).

Courts have routinely held that a plaintiff's failure to identify a specific QWR is fatal to a RESPA claim. *See Lucero v. Diversified Inv.*, No. 09-cv-1742, 2010 WL 3463607, at *4 (S.D.

14

Cal. Aug. 31, 2010) (dismissing RESPA claim and stating, "because [the plaintiffs] do not allege the contents of the [QWR] or attach it to their Complaint, it is unclear whether plaintiffs included enough information for the servicer to identify them, or asked for information covered by 12 U.S.C. § 2605"); *Delino v. Platinum Cmty. Bank*, No. 09-cv-00288, 2009 U.S. Dist. LEXIS 65799, at *9 (S.D. Cal. July 30, 2009) (dismissing RESPA claim because plaintiff failed to attach any of her purported qualified written requests to her complaint and made only conclusory allegations that they met the definition); *Gusenkov v. Residential Mortg. Capital, Inc.*, No. 10-cv-1421, 2010 U.S. Dist. LEXIS 80045, at *13-15 (E.D. Cal. Aug. 9, 2010) (dismissing RESPA claim because complaint "does not contain any facts as to when the QWR was mailed, to whom it was mailed, or the contents of the QWR [.] Plaintiff's broad and conclusory allegation that [defendant] failed to comply with disclosure requirements is not sufficient. Without pleading any facts to support the generalized claim that [defendant] violated [RESPA], plaintiff has failed to plead a plausible claim.").[12]

Here, plaintiff's RESPA claim is inadequately pled. Plaintiff fails to identify any QWR that she sent to Chase. Rather, plaintiff summarily states, "On one or more occasions . . . the plaintiff made multiple qualified written requests to Chase." (Compl. ¶ 159.) Plaintiff also fails to identify a specific response by Chase (or lack of response to a specific QWR) that violated RESPA. Rather, plaintiff generally states, "On nearly each occasion in which the Plaintiff did make her qualified written requests, Chase violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e)." (*Id.* ¶ 161.)

---

[12] *See also Reynoso v. Paul Fin., LLC*, No. 09-cv-3225, 2009 U.S. Dist. LEXIS 106555, at *25 (N.D. Cal. Nov. 16, 2009) (dismissing RESPA claim because "the Complaint completely fails to describe the qualified written request in any detail").

Without knowing the specific written correspondence that plaintiff claims constitutes a QWR, it is impossible for Chase to determine whether it complied with the statutory response periods or adequately responded to plaintiff's "multiple," but unidentified, requests. Similarly, without knowing the contents of the alleged QWRs, the Court cannot determine whether any of those communications contained enough information to qualify as a "Qualified Written Request" as statutorily defined under RESPA.

Dismissal of plaintiff's RESPA claim is also required because plaintiff has failed to allege *how* Chase's alleged RESPA violation caused her any actual damage. Rather, plaintiff merely states in conclusory fashion that, as a result of Chase's conduct, she has suffered "loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress." (Compl. ¶ 162.) Courts have routinely dismissed RESPA claims with similar conclusory allegations. *See Singh v. Wash. Mut. Bank*, No. 09-cv-2771, 2009 U.S. Dist. LEXIS 73315, at *16 (N.D. Cal. Aug. 19, 2009) (dismissing RESPA claim because "plaintiffs have failed to allege any facts in support of their conclusory allegation that as a result of defendants' failure to respond, defendants are liable for actual damages, costs, and attorney fees" (citing *Iqbal*)); *see also Wilson v. JPMorgan Chase Bank*, No. 09-cv-863, 2010 U.S. Dist. LEXIS 63212, at *27-28 (E.D. Cal. June 25, 2010) (dismissing RESPA claim because "Plaintiff has not offered any facts to support that defendant's failure to respond to her QWR resulted in pecuniary damages"); *Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009) (dismissing RESPA claim because "plaintiff only offers the conclusory statement that 'damages consist of the loss of plaintiff's home together with his attorney fees.' . . . He has not actually

attempted to show that the alleged RESPA violations caused any kind of pecuniary loss, indeed, his loss of property appears to have been caused by his default.") (citations omitted).[13]

Plaintiff's claim for statutory damages under RESPA is also fatally deficient. To recover statutory damages under RESPA, a plaintiff must plead a pattern or practice of noncompliance. *See* 12 U.S.C. § 2605(f)(1)(B). Here, plaintiff merely states in conclusory fashion, "Chase's conduct appears to be a pattern and practice of misconduct with many consumers." (Compl. ¶ 164.) Again, such conclusory recitations of the elements of the claim are insufficient as a matter of law. *Iqbal*, 556 U.S. at 678. Courts have routinely found such conclusory allegations insufficient to maintain a RESPA claim for statutory damages. *See, e.g., Lal v. Am. Home Mortg. Servicing*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) (RESPA claim deficient because "Plaintiffs flatly claim a pattern of noncompliance but state no facts other than the assurance that at trial they will present other customers who also did not receive QWR responses from Defendant."); *see also Garvey v. Am. Home Mortg. Servicing, Inc.*, No. CV-09-973, 2009 U.S. Dist. LEXIS 82548, at *2 (D. Ariz. Aug. 31, 2009) (same); *Copeland v. Lehman Bros. Bank, FSB*, No. 9-cv-1774, 2010 U.S. Dist. LEXIS 73032, at *9 (S.D. Cal. July 15, 2010) (same). Plaintiff's RESPA claim is fatally deficient and must also be dismissed.

---

[13] *See also Copeland v. Lehman Bros. Bank, FSB*, No. 09-cv-1774, 2010 U.S. Dist. LEXIS 73032, at *9 (S.D. Cal. July 15, 2010) (dismissing RESPA claim after concluding, "Plaintiff fails to plead non-conclusory factual allegations indicating how he was damaged by the alleged failure to fully respond to the QWR."); *Gonzalez v. EJ Mortg., Inc.*, No. 09-cv-2812, 2010 U.S. Dist. LEXIS 48280, at *11-12 (S.D. Cal. May 17, 2010) (dismissing RESPA claim because "Plaintiff fails to allege specifically how [defendant's] response to the QWR cause[d] him to actual[ly] suffer damages, which is a required element of his claim"); *Garibay v. Am. Home Mortg. Corp.*, No. 09-cv-1460, 2010 U.S. Dist. LEXIS 29071, at *8 (S.D. Cal. Mar. 26, 2010) (same).

20096369v1

## **CONCLUSION**

For the foregoing reasons, Chase respectfully requests that the Court dismiss with prejudice Counts One, Five, and Six in plaintiff's Fourth Amended Complaint. Plaintiff has had four attempts to adequately plead these claims against Chase, and yet she still cannot. Accordingly, her claims should be dismissed with prejudice.

WHEREFORE, defendant Chase, by counsel, respectfully requests that the Court: (1) grant its motion to dismiss; (2) dismiss Counts One, Five, and Six in plaintiff's Fourth Amended Complaint; (3) award Chase its costs and expenses incurred herein; and (4) award Chase such further relief as the Court deems appropriate.

Dated: September 5, 2012                Respectfully submitted,

**JPMORGAN CHASE BANK, N.A.**

By:   */s/ David N. Anthony*
David N. Anthony
Virginia State Bar No. 31696
*Attorney for JPMorgan Chase Bank, N.A.*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-5410
Facsimile: (804) 698-5118
Email:david.anthony@troutmansanders.com

20096369v1

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of September, 2012, I electronically filed the foregoing Defendant's Memorandum in Support of Motion to Dismiss Counts One, Five, and Six with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

> Leonard A. Bennett, Esq.
> Robin A. Abbott, Esq.
> Gary L. Abbott, Esq.
> Susan Mary Rotkis, Esq.
> CONSUMER LITIGATION ASSOCIATES, P.C.
> 763 J Clyde Morris Boulevard, Suite 1A
> Newport News, VA 23601
> Telephone: 757-930-3660
> Facsimile: 757-930-3662
> Email: lenbennett@clalegal.com
> Email: rabbottlaw@msn.com
> Email: garyabbott9@msn.com
> Email: srotkis@clalegal.com
> *Counsel for Plaintiff*

> /s/ David N. Anthony
> David N. Anthony
> Virginia State Bar No. 31696
> *Attorney for JPMorgan Chase Bank, N.A.*
> TROUTMAN SANDERS LLP
> 1001 Haxall Point
> Richmond, Virginia 23219
> Telephone: (804) 697-5410
> Facsimile: (804) 698-5118
> Email: david.anthony@troutmansanders.com

20096369v1