IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICHELLE BOURDELAIS,                    )
                                        )
             Plaintiff,                 )
                                        )
      v.                                )
                                        )   Civil Action No. 3:10CV670
JPMORGAN CHASE BANK, N.A.               )
and CHASE HOME FINANCE, LLC,            )
                                        )
             Defendants.                )

## MEMORANDUM OPINION
### (Denying Defendant's Motion to Dismiss Counts One, Five, and Six)

This action is presently before the Court on a motion to dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(6), filed by JPMorgan Chase Bank, N.A. ("Chase") on

September 5, 2012. For the reasons set forth herein, the Defendant's Motion to Dismiss

Counts One, Five, and Six will be denied.

## I. BACKGROUND

The claims at hand arise out of a mortgage loan transaction Plaintiff Michelle

Bourdelais ("Bourdelais") and her former husband entered into in December 2005. (Pl.'s

Fourth Amended Compl. ¶ 47.) Weichert Financial services originated the loan, but the

servicing of the loan was later transferred to Chase. (*Id.* at ¶¶ 47-49.) She and her husband

applied for a modification under the Department of Treasury's Home Affordable

Modification Program ("HAMP")[1] in March 2009. ( *Id.* at ¶ 52.) Bourdelais, who had

---

[1] HAMP enables certain homeowners who are in default or at imminent risk of default to obtain "permanent" loan modifications, by which their monthly mortgage payments are reduced to not more than thirty-one percent of their monthly income for a period of at least five years.

never made any late payments on their mortgage, alleges that a Chase employee incorrectly advised her that "they would need to skip their mortgage payment for the month of May [2009] in order to qualify . . . for the requested *Hamp* program." (*Id.* at ¶ 54-55.) Bourdelais further contends that Chase "inaccurately represented . . . that the consumer must be in actual default rather than simply 'at risk of imminent default.'" (*Id.* at 54.) In May 2009, Bourdelais allegedly received a letter from Chase indicating that Chase "was extending a forbearance for a period of time" and reducing the monthly payments for the months of June and July 2009. (*Id.* at ¶ 57.) The couple separated in June 2009, but nevertheless entered into a Trial Period Plan ("TPP")[2] Agreement with Chase in August 2009. (*Id.* at ¶¶ 58-62.) Bourdelais alleges that she made her August, September, and October 2009 payments on time and in accordance with the TPP Agreement, but that the payments were not applied to her principal and interest obligation. (*Id.* at ¶¶ 62-63.)

In September 2009, Bourdelais received her first "Acceleration Warning – Notice of Intent to Foreclose" from Chase. (*Id.* at ¶ 68.) Chase informed Bourdelais that she was in default because she had not made the required payments and was more than $7,000 behind on her mortgage. (*Id.* at ¶ 68.) Bourdelais claimed that to date, she had made all requested payments on time. (*Id.*) At the same time, Chase was reporting to various credit bureaus that her loan was in default, prompting Bourdelais to request that Chase correct the purported error. (*Id.* at ¶ 67.) Chase sent two additional Acceleration Warnings in February

---

[2] HAMP modifications proceed in two steps. The servicer compares the net present value ("NPV") of a borrower's existing loan with the NPV of a hypothetical HAMP-modified loan to determine whether it would be more profitable to modify the loan or to permit it to proceed to foreclosure. If modification appears to be desirable, the servicer offers the borrower a three-month TPP, the terms of which are memorialized in a TPP Agreement. If all of the conditions of the TPP Agreement are satisfied, the servicer offers a permanent modification.

and July 2010, informing her again that she was in default and falling further behind on her mortgage. (*Id.* at ¶¶ 77, 96.) Chase allegedly continued to report to the credit bureaus that her mortgage account was delinquent and that she had a past due balance on her mortgage exceeding $15,000. (*Id.* at ¶¶ 101.) Bourdelais claims that both statements were inaccurate, as Chase refused to accept her payments. (*Id.* at ¶¶ 102, 113-14.)

Bourdelais and Chase continued to communicate, by phone and in writing, about the status of her modification application and mortgage throughout 2010 and 2011. (*Id.* at ¶¶ 73-100, 112-13.) During this time, Chase allegedly continued to report that her account was past due. (*Id.* at ¶¶ 103-06.) Chase reportedly "received, but ignored" her disputes as to the accuracy of Chase's reporting and with knowledge of the inaccuracies, "deliberately chose to cause the reporting of derogatory accounts." (*Id.* at ¶¶ 107-09.)

Finally, as a result of the divorce, a state court ordered her to sell her home. (*Id.* at ¶ 117.) Before selling, however, Bourdelais sought to refinance her mortgage through a different lender, submitting multiple applications in early 2012. (*Id.* at ¶ 118.) One of the proposed lenders, Prime Lending, obtained a credit report from Kroll Factual Data ("Kroll") – the report indicated that Bourdelais was more than $17,000 past due, but acknowledged that she had disputed the information reported by Chase. (*Id.* at ¶¶ 119-20.) Bourdelais then requested that Kroll contact Chase directly. (*Id.* at ¶ 121.) During an early April 2012 conference call, a Chase representative "advised [she] and a representative of Kroll . . . that [Bourdelais] owed over $43,460.04 in past due fees on her mortgage, and that Chase had not applied any payments to her mortgage since 2009." (*Id.* at ¶ 122 (bold and italics omitted).) At the time of filing, Bourdelais had been unable to obtain pre-approval, and her efforts to

3

refinance the existing mortgage or to obtain financing to purchase a new home had failed. (*Id.* at ¶ 125.)

This case has been proceeding for some time. Bourdelais filed her initial Complaint in September 2010 and an Amended Class Complaint in December 2010. Shortly thereafter, in January 2011, Chase filed a Motion to Dismiss Counts One, Two and Three of the Amended Class Complaint. In April 2011, this Court granted the Motion with respect to Counts One and Two, but denied the dismissal of Count Three. Bourdelais then sought leave to further amend the Complaint in September 2011, but before this Court could rule on the Motion, the case was transferred to Multidistrict Litigation ("MDL") involving class claims against Chase in the District of Massachusetts in October 2011. While in MDL, Bourdelais filed her Third Amended Complaint on April 4, 2012. Two weeks later, on April 27, 2012, the case was remanded to this Court. Following remand, this Court granted Bourdelais leave to again amend her Complaint; Bourdelais then filed her Fourth Amended Complaint on August 21, 2012.

Chase filed the instant Motion to Dismiss Counts One, Five, and Six of the Fourth Amended Complaint on September 5, 2012. Count One alleges that Chase breached the duty of good faith and fair dealing, an implied covenant of the Note and Deed of Trust, by inducing her to default on her mortgage to secure a modification. Count Five asserts that Chase defamed Bourdelais by publishing false statements that she was past due on her mortgage obligation to credit reporting agencies and through credit reporting agencies to all of her potential lenders. Count Six alleges that Chase violated the Real Estate Settlement Procedures Act, specifically 12 U.S.C. § 2605(e), by failing to respond to her qualified

4

written request for information concerning her loan. Bourdelais has responded, and Chase has replied. The matter is ripe for decision.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint . . . . [I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive Rule 12(b)(6) scrutiny, a complaint only need contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The court must assume all well-pleaded factual allegations to be true and determine whether, when viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950; *see*

*also Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition, the court "may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396–97 (4th Cir. 2006) (per curiam).

## III. ANALYSIS

### A. Count One: Breach of Contract

Count One asserts that Chase violated the covenant of good faith and fair dealing implied in the Note and Deed of Trust. The Fourth Amended Complaint lists ten ways in which Chase allegedly violated the implied covenant, but the Court will focus its attention on the first three allegations. First, Chase "falsely inform[ed] her that she had to be in default on her mortgage in order to be considered for a loan modification under HAMP." (Pl.'s Fourth Amended Compl. ¶ 132.) Second, Chase "falsely inform[ed] her that since she was current on her mortgage, she would have to miss a payment in order to qualify for HAMP." (*Id.*) Third, Chase "induc[ed] her into a HAMP loan modification and Trial Payment Plan without disclosing that [Chase] would consider the reduced monthly payment to be a delinquency or default that would place the loan into arrears and would trigger foreclosure." (*Id.*) For the reasons discussed below, the Court finds the facts alleged are sufficient to state a claim for relief and will not dismiss Count One.

To prove a breach of the implied covenant of good faith and fair dealing under Virginia law, the plaintiff must establish "(1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp.

2d 443, 450 (E.D. Va. 2009) (citing *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E.2d 382 (Va. 1996)).

Chase's argument focuses exclusively on the first element. Chase correctly states that "Virginia does not recognize an independent claim for breach of the implied covenant of good faith and fair dealing . . . ." (Def.'s Mem. in Support of Mot. to Dismiss Counts One, Five, and Six 6.) The Virginia Supreme Court has clearly held that "the failure to act in good faith . . . does not amount to an independent tort," but "gives rise only to a cause of action for breach of contract." *Charles E. Brauer Co.*, 466 S.E.2d at 385. Accordingly, Bourdelais can only prevail if she can show the existence of an underlying contract.

Chase first argues that "[i]n light of the fact that this Court has already found that there is no contract entitling plaintiff to a mortgage modification, plaintiff cannot have an implied covenant-based claim related to the TPP, mortgage modification or under HAMP." (Def.'s Mem. in Support of Mot. to Dismiss Counts One, Five, and Six 7.) However, Bourdelais does not base her breach of contract claim on the TPP Agreement or the modification application. Rather, she contends that "Chase's breach of its duty to act in good faith and deal fairly with [her] breached the Note and Deed of Trust." (Pl.'s Fourth Amended Compl. ¶ 133.) Thus, the question is whether the Note and Deed of Trust constitute a contract.

To that end, "[a] deed of trust is construed as a contract under Virginia law . . . ." *Mathews v. PHH Mortg. Corp.*, 724 S.E.2d 196, 200 (Va. 2012) (citation omitted); *see also Virginia Hous. Dev. Auth. v. Fox Run Ltd. P'ship*, 497 S.E.2d 747, 752 (Va. 1998) (clarifying that "notes and contemporaneous written agreements executed as part of the

7

same transaction," such as deeds of trust, "will be construed . . . as forming one contract.") (citations and internal quotation marks omitted). Therefore, she can assert a legal claim for breach of the duty of good faith and fair dealing implied in the Note and Deed of Trust.

Bourdelais asserts that Chase breached the implied covenant of good faith and fair dealing in the Note and Deed of Trust by inducing her to default on her mortgage. In short, she alleges that Chase acted in bad faith when its agent told her that she would have to default to be eligible for a HAMP modification, when, in fact, default was not required. (Pl.'s Fourth Amended Compl. ¶¶ 54, 132-33.) Chase counters that the Note and Deed of Trust specifically required Bourdelais to make her payments. (Def.'s Mem. in Support of Mot. to Dismiss Counts One, Five, and Six 8, n.7.) Furthermore, Chase contends that "[b]ecause plaintiff fails to identify any performance of, or failure to perform, any specific term of the Note or Deed of Trust, she has failed to implicate the implied covenant of good faith and fair dealing in any way." (*Id.* at 9-10.)

The Court is not persuaded by Chase's argument and finds that the allegations in Count One of the Fourth Amended Complaint suffice to state a claim under Virginia law. As Chase correctly notes, "[u]nder Virginia law, the duty of good faith and fair dealing implicit in every contract cannot be used to override or modify explicit contractual terms." *Clemons v. Home Savers, LLC*, 530 F. Supp. 2d 803, 812 (E.D. Va. 2008) (citing *Riggs Nat'l Bank v. Linch*, 36 F.3d 370, 373 (4th Cir. 1994) (internal quotation marks omitted). Moreover, the implied covenant of good faith and fair dealing "cannot be the vehicle for rewriting an unambiguous contract in order to create duties that not otherwise exist." *Ward's Equipment v. New Holland North America*, 493 S.E.2d 516, 520 (Va. 1997).

However, the duty of good faith and fair dealing "prohibits a party from acting arbitrarily, unreasonably, and in bad faith." *SunTrust Mortg., Inc. v. Mortgages. Unlimited, Inc.*, No. 3:11CV861-HEH, 2012 U.S. Dist. LEXIS 74106, at *8-9 (E.D. Va. May 29, 2012); *see also Virginia Vermiculite, Ltd. v. W.R.Grace & Co.*, 156 F.3d 535, 542 (4th Cir. 1998) ("[I]t is a basic principle of contract law in Virginia . . . that a party may not exercise contractual *discretion* in bad faith . . . .") The duty of good faith and fair dealing "also prohibits one party from acting in such a manner as to prevent the other party from performing its obligations under the contract." *SunTrust Mortg., Inc.*, 2012 U.S. Dist. LEXIS 74106, at *9.

Like the plaintiff in *Acuna v. Chase Home Finance, LLC*, No. 3:10-CV-905, 2011 U.S. Dist. LEXIS 52971 (E.D. Va. May 17, 2011), a case in which this Court refused to dismiss a claim for breach of good faith and fair dealing implied in the plaintiff's note and deed of trust, Bourdelais claims that Chase induced her to breach her Note and Deed of Trust. Unlike the plaintiff in *Acuna*, Bourdelais was not merely told that she stood a better chance of gaining approval for her modification if she defaulted, but she was allegedly informed that she would have to default to be eligible for a modification.

The instant case can also be distinguished from several recent opinions in which this Court has held that the duty of good faith and fair dealing does not extend to the review and processing of loan modifications, absent an express provision indicating otherwise. *See, e.g., Chance v. Wells Fargo Bank, N.A.*, No. 3:12CV320-JRS, 2012 U.S. Dist. LEXIS 137507 (E.D. Va. Sept. 25, 2012); *De Vera v. Bank of America, N.A.*, No. 2:12cv17, U.S. Dist. LEXIS 87840 (E.D. Va. June 25, 2012); *Bennett v. Bank of America, N.A.*, No. 3:12CV34-HEH, 2012 U.S. Dist. LEXIS 54725 (E.D. Va. Apr. 18, 2012); *Correll v. Bank of*

*America, N.A.*, No. 2:11cv477, 2012 U.S. Dist. LEXIS 12960 (E.D. Va. Feb. 2, 2012).
Contrary to those cases, in which the plaintiffs alleged that the defendants' handling of their
modification applications failed to meet the duty of good faith and fair dealing, Bourdelais
alleges that Chase's incorrect representation of the eligibility requirements for the
modification induced her to default and breach her obligation under the Note and Deed of
Trust.

In light of these distinctions, the Court believes that it would be inappropriate to
dismiss Count One at this stage. The Fourth Amended Complaint has alleged facts
sufficient to show a contractual relationship between the parties and to show a breach of the
implied covenant of good faith and fair dealing. First, the Note and Deed of Trust plainly
constitute a contract under Virginia law. Second, Chase's actions alleged in Count One, if
true, would be unreasonable and in bad faith. Moreover, by inducing Bourdelais to default,
Chase arguably "acted in such a manner as to prevent [her] from performing [her]
obligations under the contract." *SunTrust Mortg., Inc.*, 2012 U.S. Dist. LEXIS 74106, at *9.
Thus, the Court will not dismiss Count One of the Fourth Amended Complaint.

**B. Count Five: Defamation**

Chase contends that Count Five, a common law defamation claim, is preempted by
the Fair Credit Reporting Act ("FCRA"). Specifically, Chase argues that 15 U.S.C. §
1681t(b)(1)(F) preempts the defamation claim "because [it] is based on Chase's alleged
reporting of inaccurate information about her to consumer reporting agencies." (Def.'s
Mem. in Support of Mot. to Dismiss Counts One, Five, and Six 10.) Bourdelais offers two
arguments in response. First, she contends that 15 U.S.C. § 1681t(b)(1)(F) does not apply

because Chase did not act as a furnisher of credit-reporting information and Kroll is not a

consumer reporting agency ("CRA"). Second, she argues that the preemption exception for

willful and malicious defamatory statements created by 15 U.S.C. § 1681h(e) applies.

While neither party correctly applies the law, the correct application requires the Court to

deny the motion to dismiss Count Five.

   To begin, it is necessary to understand the preemption framework created by 15

U.S.C. §§ 1681t(b)(1)(F) and 1681h(e). First, section 1681t(b)(1)(F) provides:

> No requirement or prohibition may be imposed under the laws of
> any State . . . with respect to any subject matter regulated under . . .
> section 1681s-2, relating to the responsibilities of persons who
> furnish information to consumer reporting agencies . . . .

15 U.S.C. § 1681t(b)(1)(F). "By its very language, this subsection preempts state laws

concerning any matter covered in 15 U.S.C. § 1681s-2."[3] *Evans v. Trans Union LLC*, No.

2:10-cv-00945, 2011 U.S. Dist. LEXIS 14724, at *9 (S.D. W. Va. Feb. 14, 2011). Second,

section 1681h(e) states:

> Except as provided in sections 1681n and 1681o, no consumer may
> bring any action or proceeding in the nature of defamation . . . with
> respect to the reporting of information against any consumer
> reporting agency, any user of information, or any person who
> furnishes information to a consumer reporting agency, based on
> information disclosed pursuant to section 1681g, 1681h, or 1681m
> of this title, or based on information disclosed by a user of a
> consumer report to or for a consumer against whom the user has
> taken adverse action, based in whole or in part on the report except

---

[3] Section 1681s-2 outlines the obligations of furnishers of credit information to CRAs. "Section
1681s-2(a) . . . prohibits furnishers from providing information known or believed to be inaccurate,
and it includes the duty to correct any errors in reporting and update the information furnished to
CRAs . . . . Section 1681s-2(b) outlines [the furnishers' duty] to . . . investigat[e] . . . the
completeness or accuracy of any information they provide to CRAs, but only once they receive
notice of a dispute or inaccuracy . . . ." *Evans*, 2011 U.S. Dist. LEXIS 14724, at *9.

> as to false information furnished with malice or willful intent to
> injure such consumer.

15 U.S.C. § 1681h(e). Thus, the two provisions conflict: "while § 1681t(b)(1)(F) seems to

preempt all state laws regarding the liability of information furnishers, section 1681h(e)

preempts only certain types of common law actions against information furnishers, and then

only under certain circumstances." *Evans*, 2011 U.S. Dist. LEXIS 14724, at *10-11.

Seven of the nine district courts in the Fourth Circuit, including this Court, have

reconciled this conflict using the "statutory approach" – holding that § 1681t(b)(1)(F) only

applies to state statutory claims and that § 1681h(e) only addresses state common law

claims. *See Kemboi v. Ocwen Loan Servicing, LLC*, No. 3:11-CV-36(L), 2012 U.S. Dist.

LEXIS 2741, at *7 (N.D. W. Va. Jan. 9, 2012); *Evans*, 2011 U.S. Dist. LEXIS 14724, at

*16-18; *Davis v. Trans Union, LLC*, 526 F.Supp.2d 577, 589 (W.D.N.C. 2007); *Beuster v.*

*Equifax Info. Servs.*, 435, F.Supp.2d 471, 479 (D. Md. 2006); *Johnson v. MBNA America*

*Bank, N.A.*, No. 1:05CV00150, 2006 U.S. Dist. LEXIS 10533, at *24 (M.D.N.C. Mar. 9,

2006); *Barnhill v. Bank of America, N.A.*, 378 F.Supp.2d 696, 703-04 (D. S.C. 2005);

*Jeffery v. Trans Union, LLC*, 273 F. Supp. 2d 725, 728 (E.D. Va. 2003). The Eastern

District of North Carolina implicitly applied the statutory approach in *Key v. Dirty S.*

*Custom Sound & Wheels*, No. 5:09-CV-32-D, 2009 U.S. Dist. LEXIS 46907, at *3-6

(E.D.N.C. June 3, 2009). Only the Western District of Virginia has yet to embrace the

statutory approach, but that Court has not yet been presented with a case requiring it to

reconcile the provisions. *See Blick v. JP Morgan Chase Bank, N.A.*, No. 3:12-cv-00001,

2012 U.S. Dist. LEXIS 41265, at *22-23 (W.D. Va. Mar. 27, 2012) (construing plaintiffs'

claims regarding derogatory reporting to assert state law claims expressly preempted by 15 U.S.C. § 1681t(b)(1)(F)).

Some district courts have suggested that the Fourth Circuit has implicitly recognized the statutory approach. *See, e.g., Barnhill*, 378 F. Supp. 2d at 703-04; *Jeffery*, 273 F. Supp. 2d at 728. However, the Fourth Circuit specifically acknowledged in *Ross v. FDIC*, 625 F.3d 808, 814 n.* (4th Cir. 2010), that it has not yet addressed the issue. This Court still finds its own precedent and that of its fellow districts compelling. Accordingly, this Court will apply the statutory approach in the immediate case.

Bourdelais first argues that § 1681s-2, which only applies to "furnishers of information to consumer reporting agencies," does not govern communications between Chase and Kroll. 15 U.S.C. § 1681-2. Therefore, the preemption provisions do not apply. Bourdelais states that "[n]owhere in the Fourth Amended Complaint does [she] allege that Kroll was a consumer reporting agency." (Mem. in Opposition to Def.'s Mot. to Dismiss Counts One, Five, and Six 21.) She adds that the "communication [between Kroll and Chase] was not in [Chase's] capacity as a credit reporting furnisher." (*Id.*) Since Chase did not act as a furnisher and Kroll is not a CRA, Bourdelais argues, section 1681s-2 and the accompanying preemption provisions do not apply.

However, § 1681s-2 does apply, as the definitions of "consumer reporting agency" and "furnisher" plainly include Kroll and Chase. A CRA is defined as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of

interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).  The facts alleged in the Fourth Amended Complaint clearly support the conclusion that Kroll Factual Data was a CRA.  In March 2012, Kroll provided a "Residential Merged Credit Report" to Prime Lending for use in evaluating Bourdelais's credit worthiness.  (Fourth Amended Compl. ¶ 120.)  Based on the record, it is reasonable to infer that Kroll performed this service "for monetary fees, dues, or on a cooperative nonprofit basis," regularly assembles such reports, and uses some "means or facility of interstate commerce" in preparing and/or furnishing consumer reports.  15 U.S.C. § 1681a(f).  Thus, Kroll appears to satisfy the definition of a CRA.

"Furnisher means an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report."  12 C.F.R. § 41.41(c).  However, "an entity is not a furnisher when it:"

> (1) [p]rovides information to a consumer reporting agency solely to obtain a consumer report . . . ; (2) [i]s acting as a "consumer reporting agency" . . . ; (3) [i]s a consumer to whom the furnished information pertains; or (4) [i]s a neighbor, friend, or associate of the consumer, or another individual with whom the consumer is acquainted or who may have knowledge about the consumer, and who provides information about the consumer's character, general reputation, personal characteristics, or mode of living in response to a specific request from a consumer reporting agency.

12 C.F.R. § 41.41(c).  During the April 3, 2012 conference call, Chase's conduct clearly fell within the range of actions outlined in § 41.41(c).  In disclosing the alleged $43,000 deficiency on her mortgage to Kroll, Chase clearly furnished information relating to a consumer, Bourdelais, to a CRA, Kroll.  The whole purpose of the call was to clarify the information provided by Chase and included by Kroll in the March 2012 Residential

14

Merged Credit Report. By updating and clarifying the information previously provided, Chase was continuing to furnish information for inclusion in a consumer report. Furthermore, none of the exceptions to § 41.41(c) apply. Therefore, Chase was acting as a furnisher during the April 3, 2012 conference call.

Having established that § 1681s-2 applies, the Court must now determine whether the preemption provisions in § 1681t(b)(1)(F) and § 1681h(e) apply. By using the statutory approach to reconcile the two preemption provisions, the Court has determined that § 1681t(b)(1)(F) only pertains to state statutory claims. Since Bourdelais asserts no state statutory claim, § 1681t(b)(1)(F) is irrelevant. Under the statutory approach, § 1681h(e) applies only to common law claims, specifically those arising from disclosures pursuant to section 1681g, 1681h, or disclosures "by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based . . . on the report . . . ." 15 U.S.C. § 1681h(e). Bourdelais makes a common law claim, but the disclosed information underpinning the claim does not fall into any of the categories triggering preemption by § 1681h(e). Sections 1681g and 1681h apply only to disclosures made by CRAs. *See* 15 U.S.C. §§ 1681g and 1681h. Section 1681m applies only to users of consumer reports. *See* 15 U.S.C. § 1681m. As Chase was neither a CRA nor a user of her consumer report, sections 1681g, 1681h, and 1681m do not apply. Lastly, Chase neither used her consumer report nor took adverse action against Bourdelais based on her report. Thus, neither preemption provision applies to the instant case, and the Court need not determine whether the malice or willful intent exception to § 1681h(e) is satisfied. Accordingly, the Court will deny Chase's motion to dismiss the defamation claim.

## C. Count Six: Real Estate Settlement Procedures Act Violation

Chase contends that the alleged violation of the Real Estate Settlement Procedures Act ("RESPA") for failing to respond to a Qualified Written Request ("QWR") must be dismissed for three reasons.  First, Bourdelais has failed "to identify any QWR that she sent to Chase," making it impossible to "determine whether any of [her] communications contained enough information to qualify as a 'Qualified Written Request' as statutorily defined under RESPA."  (Def.'s Mem. in Support of Mot. to Dismiss Counts One, Five, and Six 15-16.)  Second, she "has failed to allege *how* Chase's alleged RESPA violation caused her any actual damage." (*Id.* at 16.)  Third, her claim for statutory damages is supported only by conclusory recitations of the elements of the claim, which are insufficient under *Iqbal.* (*Id.* at 17.)  While Chase presents a cogent analysis of the relevant law, the Court finds that the allegations in the Fourth Amended Complaint, combined with reasonable inferences drawn therefrom, are sufficiently plausible to support a claim for relief.

Count Six arises from § 2605(e), which establishes the duty of loan servicers to respond to borrower inquiries.  12 U.S.C. § 2605(e).  Specifically, these duties are triggered when the servicer "receives a qualified written request from the borrower . . . ." 12 U.S.C. § 2605(e)(1)(A).  RESPA defines a QWR as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that . . . (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

16

12 U.S.C. § 2605(e)(1)(B). In addition to showing that the request meets the definition of a QWR and that the servicer failed to perform its duties, the plaintiff must show actual damages and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [section 2605] . . . ." 12 U.S.C. § 2605(f)(1).

The Court is convinced that Count Six alleges sufficient facts to survive the challenges raised in the motion to dismiss. First, her allegations indicate that "within the two years prior to the filing of this suit," Bourdelais "made multiple qualified written requests to Chase insisting that it process her *HAMP* application, correct inaccurate reporting and otherwise provide information regarding her loan." (Fourth Amended Compl. ¶ 159.) Her communications were in writing, and Bourdelais specified the time period in which she made the requests.[4] As the author of these letters to Chase, Bourdelais presumably signed them, thus identifying herself and providing sufficient information for Chase to identify her account. Finally, her requests that Chase process her HAMP application, correct the inaccurate reporting, and provide further information concerning her account are specific enough at the pleading stage to satisfy the requirement that the QWR contain a statement of the borrower's reasons to believe "that the account is in error or provide[] sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

---

[4] Chase suggests that Bourdelais failed to identify the time at which the QWRs were made. Such a failure was offered as part of the rationale for granting a similar motion to dismiss in *Caballero v. Am. Mortg. Network*, No. 1:11cv622, 2011 U.S. Dist. LEXIS 87210, at *19 (E.D. Va. Aug. 8, 2011). While Bourdelais did not specify the dates on which she made the QWRs, she did provide the timeframe in which she made them. This window of time is a sufficient factual allegation at the pleading stage.

Second, the damage allegations are sufficient to survive the motion to dismiss. Bourdelais asserts that "[a]s a result of this conduct [in violation of §2605(e)] . . . , [she] suffered actual damages including without limitation . . . : loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress." (Fourth Amended Compl. ¶ 162.)   Accordingly, Bourdelais has specified the types of actual damages she seeks and has satisfactorily alleged a causal relationship between the conduct and the harm.

Furthermore, Bourdelais alleges that "Chase's conduct appears to be a pattern and practice of misconduct with many consumers," particularly in light of its alleged repeated violations in dealing with her.   (*Id.* at ¶ 164.)   She concludes that "Chase is thus also liable to [her] for additional [statutory] damages up to $1,000 per violation." (*Id.*)   Not only would it be unreasonable to expect Bourdelais to be able to make more detailed allegations before discovery has been conducted, but also it can be argued that Chase's conduct with regard to Bourdelais establishes on its own a pattern or practice of noncompliance.   *See Serfass v. Cit Group/Consumer Fin., Inc.*, No. 8:07-90-WMC, 2008 U.S. Dist. LEXIS 68946, at *12 (D.S.C.  Sept. 10, 2008) (finding that "the defendant's failure to respond to the plaintiffs' five qualified written requests establishe[d] a 'pattern or practice of noncompliance with requirements of this section' of RESPA) (citing *Ploog v. Homeside Lending, Inc.*, 209 F.Supp.2d 863, 869 (N.D. Ill. 2002)).

Regardless, the Court's opinion does not hinge on the issue of statutory damages, as the allegations of actual damages caused by Chase's violations of § 2605(e) are sufficient to deny the motion to dismiss.   The Court is not persuaded that the "allegations are simply too

threadbare to state a claim for a violation of Section 2605 . . . ." *Fletcher v. Homecomings Fin. LLC*, No 1:08CV393, 2010 U.S. Dist. LEXIS 40706, at \*10 n.5 (M.D.N.C. Apr. 22, 2010).  Therefore, Count Six will not be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Chase's Motion to Dismiss Counts One, Five, and Six will be denied, and an appropriate Order will accompany this Memorandum Opinion. Determination of whether evidence supports these claims will have to wait until summary judgment.

/s/

Henry E. Hudson
United States District Judge

Date: Nov. 5, 2012
Richmond, VA

19